In the Matter of the Estate of Mary Elizabeth BENNEY, Deceased,

The PEOPLE of the State of Colorado, Petitioner,

v.

Robert A. CARVELL and Gary S. Link, Respondents.

No. 88SC619.

Supreme Court of Colorado, En Banc.

April 16, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Maurice G. Knaizer, First Asst. Atty. Gen., Denver, for petitioner.

Gary S. Link, Colorado Springs, pro se.

Robert Carvell, Colorado Springs, pro se.

Chief Justice QUINN delivered the Opinion of the Court.

The question in this case is whether the state's claim for recoupment of state funds for court-appointed attorney fees and investigative expenses paid on behalf of an indigent defendant in a criminal prosecution has priority over an attorney's lien for professional services rendered by the attorney on behalf of the same defendant in connection with the defendant's claim against the estate of his deceased wife. The court of appeals in *In the Matter of the Estate of Benney*, 771 P.2d 7 (Colo.App.1988), held that the attorney's lien was entitled to priority over the state's claim for recoupment. We reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for further proceedings.

I.

The relevant facts are not disputed. On or about February 8, 1984, Dan Benney (Benney) was charged in the District Court of El Paso County with first-degree murder of his wife, Elizabeth Benney, conspiracy to commit first degree murder, and a crime of violence. The district court, on February 17, 1984, appointed Gary Link to represent Benney pursuant to section 21-1-105, 8B C.R.S. (1986), which authorizes a court for cause to appoint an attorney other than the state public defender to represent an indigent person. Benney was subsequently convicted of the charges and on December 21, 1984, was sentenced to life imprisonment.

The record before us is quite sparse, and the only reference to attorney and investigation fees is the following notation in the judgment of conviction: "The amount of $1900.00 which has already been paid into the registry fund in this case is to be applied toward the attorney and investigative fees, and not to the costs listed herein."[1] On March 12, 1985, the district court issued an order authorizing the payment of $13,374.38 in state funds to Gary Link for legal services on behalf of Benney in the criminal prosecution. Benney's conviction was affirmed on appeal. *People v. Benney*, 757 P.2d 1078 (Colo.App.1987).

In a separate proceeding involving the probate of the estate of Elizabeth Benney, the personal representative filed a petition on February 5, 1985, for the final settlement and distribution of the estate. Two days later Gary Link and Robert Carvel (hereinafter referred to as "attorneys") filed an objection to the petition, and on March 12, 1985, filed in the probate case a claim on behalf of Benney for an equitable lien against the estate based on contributions which Benney allegedly made toward the purchase of the family residence.[2] On December 5, 1985, prior to the court's resolution of Benney's claim, the attorneys filed a notice of an attorney's lien "against any and all monies they have or might obtain, through their assistance, on behalf of Dan H. Benney" in the probate case. The following day, December 6, 1985, the district court granted Benney's claim for $13,425, plus interest, but expressly ordered that the personal representative deposit the amount of Benney's claim into the registry of court and that the money be held in the registry "until such time as any claims the State of Colorado may have against such monies are resolved."[3]

In early January 1986, the attorneys filed a motion to reduce the lien to judgment. However, before the court acted on the motion, the state controller, on January 27, 1986, filed a claim for recoupment from Benney of the $13,374.38 which the state paid to Gary Link for attorney fees and the $2,998.75 paid by the state for investigative expenses in connection with the murder prosecution. At a hearing on the state's claim the attorneys testified that they had provided legal services on Benney's behalf in the probate case and in several other matters as well. There was no evidence, however, establishing the amount and value of the legal services provided to Benney in the probate case. The district court ruled that the state's claim for recoupment of monies paid for attorney fees and investigative expenses was superior to the attorney's lien filed in the probate action and ordered that the $13,425, plus interest, previously deposited by the personal representative into the registry be turned over to the general fund of the state toward payment of its claim of $16,373.13.

The attorneys appealed to the court of appeals, which reversed the judgment of the district court. The court of appeals held that since the attorney's lien had been filed in the probate case the day before the district court's award to Benney on his claim against his deceased wife's estate, and since the state's claim for recoupment was not filed until approximately six weeks thereafter, the attorney's lien had priority over the state's claim. *Estate of Benney*, 771 P.2d at 8. In the court of appeals'

1. The "costs listed herein" refer to the following items listed under a heading of "costs" in the judgment of conviction:

| | |
|---|---|
| Court: | $ 15.00 |
| DA: | $138.92 |
| Victim Comp. | $ 50.00 |
| Sheriff | $202.00 |

2. Before the attorneys filed Benney's claim, they had presented it to the personal representative, who denied the claim. *See* § 15–12–804, 6B C.R.S. (1987).

3. In its ruling the district court determined that Benney's claim was not excluded by section

15–11–803(3), 6B C.R.S. (1987), which prohibits a named beneficiary of any contractual arrangement from recovering on the contract when the beneficiary kills the principal obligee and is convicted of murder or manslaughter. The court also ruled that Benney's claim did not involve an "interest" for purpose of section 15–11–803(4), 6B C.R.S. (1987), which states that "[a]ny other acquisition of property or interest by the killer shall be treated in accordance with the principles of this section." These aspects of the court's ruling are not before us, and we express no opinion on them.

view, when the district court ordered that the probate award to Benney be held in abeyance until resolution of the state's claim for recoupment, the probate award to Benney, "as a matter of law, was already burdened with the attorney's lien for attorney fees." *Id.* at 8–9. We granted the state's petition for certiorari to review the court of appeals' resolution of the issue of priority between the attorney's lien for professional services rendered in obtaining a judgment on behalf of a client and the state's claim for recoupment of attorney fees and investigative expenses paid on behalf of a defendant in a criminal prosecution.

## II.

Our analysis of this case must proceed from an examination, on the one hand, of the scope and effect of the statutory scheme creating an attorney's lien and, on the other, the statutory scheme for recoupment of attorney fees and other expenses paid on behalf of a defendant in connection with a criminal prosecution.

## A.

There are two types of attorney's liens in Colorado, both created by statute: the "retaining lien" and the "charging lien." *E.g., Donaldson v. Gaudio,* 260 F.2d 333 (10th Cir.1958); *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709 (1933); *In re Marriage of Rosenberg,* 690 P.2d 1293 (Colo.App.1984).

Section 12–5–120, 5 C.R.S. (1985), provides an attorney with a retaining or possessory lien "for the general balance of compensation upon any papers of [the] client which have come into [the attorney's] possession" and upon any money due the client "in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party." The retaining lien thus gives the attorney the right to retain the client's papers until the general balance due for legal services is paid to the attorney, "whether such services grew out of the special matters then in [the attorney's] hands, or other legal matters." *Collins,* 92 Colo. at 437, 21 P.2d at 710.

■ The charging lien is created by section 12–5–119, 5 C.R.S. (1985), and grants an attorney a lien on claims or choses in action (such as, for example, the client's claim against another for money due on a contract or on an unpaid promissory note payable to the client), on any judgment that the attorney obtained or assisted in obtaining in favor of the client, and on any legal claim filed by the attorney for fees due from the client.[4] The purpose of the charging lien is to satisfy the attorney's equitable claim for services rendered to the client. *See Fillmore v. Wells,* 10 Colo. 228, 236–37, 15 P. 343, 347 (1887).[5] Section 12–5–119 states that the attorney may file with the clerk of the court wherein an action is pending a "notice of lien" setting

**4.** The full text of section 12–5–119, 5 C.R.S. (1985), is as follows:

All attorneys—and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having

obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees. Such notice of lien shall not be presented in any manner to the jury in the case in which the same is filed. Such lien may be enforced by the proper civil action.

**5.** *Fillmore* involved a statute enacted in 1883, ch. VI, § 85, sec. 17, 1883 Colorado General Statutes at 139, which created an attorney's lien for any professional services rendered by the attorney in any court of the state. The statute involved in the instant case was enacted in 1903, Ch. 71, sec. 1, 1903 Colo.Sess.Laws 145, and, as we note in the text, has been interpreted to create a lien only for services rendered in the action in which judgment is entered. *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709 (1933).

forth the attorney's agreement of compensation with his client and that such notice, when duly entered of record, shall constitute a notice to all persons and parties, including any judgment creditor of the client, of the attorney's first lien on any judgment entered in favor of a client. The statutory text of section 12–5–119 indicates that in cases where an attorney files a claim against the client to collect a fee for services rendered, the charging lien attaches at the commencement of the suit. The statutory text also provides for a charging lien when the client's money, property, claim or chose in action comes into the hands of the attorney rendering legal services to the client. *See generally, Dankwardt v. Kermode*, 68 Colo. 225, 187 P. 519 (1920).

As pertinent to the instant case, which involves a probate award in favor of the client, section 12–5–119 provides that the charging lien attaches at the entry of judgment, and our prior decisions have so held. *MacFarlane v. Harthun*, ˙195 Colo. 38, 41–42, 581 P.2d 716, 718 (1978); *Johnson v. McMillan*, 13 Colo. 423, 426, 22 P. 769, 770 (1889). In contrast to the retaining lien, which secures the payment of attorney fees for all legal matters on which services have been rendered, the charging lien is limited to securing the payment of the reasonable value of attorney fees in the particular matter then being handled by the attorney. *See generally Collins*, 92 Colo. at 438, 21 P.2d at 711. Where the attorney obtains or assists in obtaining a judgment in favor of the client, therefore, the charging lien extends only to attorney fees for those professional services rendered in obtaining the judgment and not for unrelated services. *Id.; see also Duncan v. Stickney Co.*, 97 Colo. 9, 46 P.2d 750 (1935).

### B.

The state public defender is charged with the responsibility of representing indigent defendants in criminal prosecutions, but a court "for cause" may appoint an attorney other than the state public defender to represent an indigent defendant in a crimi-

nal case. § 21–1–105, 8B C.R.S. (1986). When the court makes such an appointment, it must award the attorney "reasonable compensation and reimbursement for expenses necessarily incurred, to be fixed and paid by the court from state funds appropriated therefor." *Id.* Section 21–1–106, 8B C.R.S. (1986), the recoupment statute, was enacted in 1981 as an addition to the statutory scheme outlining the duties of the state public defender and states as follows:

In any case when a court determines that a defendant is able to repay all or part of the expense of state-supplied or court-appointed counsel or any ancillary expenses incurred in representing such defendant, the court shall assess such fees or costs against such defendant and shall notify the controller, who shall institute proceedings pursuant to section 24–30–202.4, C.R.S., necessary to recover such fees or costs.

Although the obvious purpose of the recoupment statute is to provide the state with the means of recouping monies paid on behalf of an indigent defendant who is financially able to repay such expenses, the nature of the state's interest created by the statute is not so obvious.

As the starting point of statutory analysis, we look to the statutory text itself in our effort to discern legislative intent. *E.g., Colorado Common Cause v. Meyer*, 758 P.2d 153, 160 (Colo.1988); *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo.1987). There is no language in the recoupment statute that expressly creates a preference for the state's claim for attorney fees and ancillary expenses. Nor does section 24–30–202.4, 10A C.R.S. (1988), to which the recoupment statute expressly refers, contain language expressive of a legislative intent to create a statutory preference for the state's recoupment claim. On the contrary, section 24–30–202.4 merely authorizes the state controller to assist state agencies in debt collections and to institute procedures for collection pursuant to rules promulgated by the executive director of the department of administration.[6]

---

**6.** Section 24–30–202.4, 10A C.R.S. (1988), states,     in pertinent part, as follows:

Since section 21–1–105 does not expressly create a preference for the state's recoupment claim over the claims of other creditors—as the General Assembly might have done—the question arises whether such preference should be implied on the basis of the common law rule that debts owed to the sovereign are entitled to a preference. *See United States Fidelity & Guaranty Co. v. McFerson,* 78 Colo. 338, 241 P. 728 (1925). Our prior case law clearly indicates that this common law rule is of limited applicability. In *Board of County Commissioners v. McFerson,* 90 Colo. 408, 9 P.2d 614 (1932), for example, this court held that a county's claim for funds, previously deposited in a bank and subsequently seized by a state bank commissioner when the bank became insolvent, was not entitled to priority over claims of other creditors. We there stated that the common law rule, which is founded on considerations of necessity, should be limited "according to the expression of the statute that preserved it," and that, because the statutory scheme for the protection of public monies in the hands of a county treasurer was silent on the issue of preference and provided for the posting of a bond by county commissioners as security for a portion but not all of the county's deposits, the county was not entitled to preference over the claims of other creditors. 90 Colo. at 411–13, 9 P.2d at 615–16; *see also United States Fidelity & Guaranty Co.,* 78 Colo. 338, 241 P. 728.

█ The recoupment statute authorizes a court presiding over a criminal case to make a finding that the defendant is capable of reimbursing the state for a specific amount of money expended by the state on his behalf and to assess such amount against the defendant. The court's assessment, when based on an adequate factual finding and entered on the record, is the substantive equivalent of a judgment. In determining the legal significance of the order of assessment, we must presume that the legislature, in enacting a statute, intends the statute to be effective

(1) The controller shall advise and assist the various state agencies concerning the collection of debts due the state through such agencies, in accordance with rules and regulations promulgated by the executive director of the department of administration, to achieve the prompt collection of debts due such agencies.

\* \* \* \* \* \*

(3) (a)(I) Upon referral to the controller of debts due the state classified "referable to controller," he shall institute procedures for collection thereof pursuant to the rules and regulations promulgated therefor by the executive director of the department of administration.

(II) The controller may certify to the department of revenue any unpaid debt due the state to be offset against a tax refund due the debtor, pursuant to section 39–21–108(3), C.R.S. Before any unpaid debt is certified to the department of revenue, the controller shall give written notice to the debtor that the debt may be offset against a tax refund due the debtor and, for debts less than five hundred dollars, shall provide the debtor opportunity for a hearing to dispute the debt. No money shall be refunded nor shall be offset against a tax refund due the debtor if such a hearing is requested until such time as the hearing is completed and a decision is rendered. Provisions for adequate notice and opportunity for hearing shall be made by rules and regulations promulgated by the executive director of the department of administration. Debts which are greater than or equal to five hun-

dred dollars shall be reduced to judgment. Any debts may be written off, released, or compromised pursuant to paragraph (c) of this subsection (3).

(b) If the controller and the office of the state solicitor general agree that it is not possible or feasible for a collection to be made by them, the controller may employ private counsel or a collection agency to handle the collection. Employment of private counsel or a collection agency shall be in accordance with the rules and regulations promulgated by the executive director of the department of administration, but in no event shall the fees paid to the private counsel or collection agency exceed one-third of the amount recovered.

(c) The controller, with the consent of the state treasurer, is authorized to write off, release, or compromise any debt due the state, but only in accordance with the rules and regulations applicable thereto.

(d) Net proceeds of debts collected by the controller shall be accounted for and paid into the fund from which the receivable was derived, and if the fund is no longer in existence, it shall be paid into the general fund, and the controller shall report periodically and at least annually to the general assembly concerning the results of collections activities. Net revenues collected by the controller to pay for state collection activities shall be deposited in the debt collection fund.

and to achieve a result feasible of execution and further intends to favor the public interest over any private interest. § 2–4–201(1), 1B C.R.S. (1980). In light of these presumptions, along with the fact that the obvious purpose of the statute is to secure the state's interest up to the amount of the assessment order, we are satisfied that the legislature intended the assessment order to constitute a lien on any presently existing or after-acquired property of the defendant. Only in this way can the legislative goal of securing the state's interest up to the amount of the assessment order be effectuated. Under this construction, therefore, the sentencing court's order of assessment takes precedence over any liens imposed subsequent to the assessment order. In the absence of a duly entered order of assessment, however, the state stands in the position of a general creditor, with the result that any claim by the state for attorney fees and ancillary expenses necessarily would be subject to a preexisting attorney's lien on a judgment obtained by the attorney in favor of the defendant.[7]

### III.

■ It is in light of the foregoing principles that we turn to the facts of this case. Two factual questions, neither of which yet has been answered in the course of these proceedings, are critical to a proper resolution of the priority issue between the state's recoupment claim and the attorney's lien. The first question is the amount of fees and costs assessed against Benney in the criminal case. This question is of vital importance because the amount of the state's recoupment lien is limited to the amount of assessment. The amount of assessment and corresponding lien, therefore, possibly could exceed and thus exhaust the probate award to Benney. The second question relates to the amount of attorney fees attributable to the legal services rendered to Benney in the probate case. The significance of this question lies in the fact that the attorney's charging lien is limited to securing the payment of those attorney fees attributable to the case in which the judgment was entered. There possibly could be money, therefore, in excess of the charging lien available to satisfy the state's recoupment claim even though that claim might not have been reduced to judgment by an assessment order in the criminal case.

In entering the probate award of $13,425, plus interest, in favor of Benney and against the estate of his deceased wife, the district court did not determine the amount of the sentencing court's assessment order against Benney. What the sparse record before us shows is that the sentencing court determined that the $1900 previously paid into the registry of court by Benney was to be applied to attorney and investigative fees in the criminal prosecution, but nowhere does the record show that the

7. We acknowledge that the recoupment statute permits the state to recover monies expended by the state in fulfillment of its obligation to provide effective assistance of counsel to indigent defendants in criminal cases, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and, in that sense, the recoupment statute is calculated to assist the state in fulfilling its constitutional responsibility. Since the monies necessary to fulfill its responsibility, however, will have been appropriated by the General Assembly for that purpose long prior to the order of assessment, the mere fact that the state is obligated to provide legal counsel to indigent defendants is not sufficient to elevate the state's recoupment claim to a preferred status over preexisting liens, at least in the absence of a clear legislative intent to create a preference for the state's recoupment claim.

The state relies on article V, section 38 of the Colorado Constitution as support for its claim that the state's "debt" must be given priority over a preexisting lien. Article V, section 38 of the Colorado Constitution states, in pertinent part, that "[n]o obligation or liability of any person ... by the state ... shall ever be ... postponed or in any manner diminished by the general assembly, nor shall such liability or obligation be extinguished except by payment thereof in the proper treasury." We find this constitutional provision inapplicable to the issue before us. The text of the recoupment statute does not postpone, diminish, or extinguish a criminal defendant's liability to the state for the costs of a court-appointed attorney and other ancillary expenses paid by the state on the defendant's behalf, but rather provides the means by which a court presiding over a criminal prosecution may secure the state's interest by providing the state with a lien on any existing and after-acquired property of the defendant.

sentencing court assessed any additional fees against Benney. Although the district court in entering · the probate award for Benney made it subject to any recoupment claim by the state, we are at a loss to determine whether the amount of the assessment order imposed by the sentencing court against Benney was limited to $1900 or whether the sentencing court, at the time of sentencing or sometime later, assessed further fees and costs against Benney. Furthermore, the district court never had occasion to determine the amount of attorney fees attributable to legal services rendered to Benney in the probate case, as distinguished from other legal matters which the attorneys handled for Benney.

The court of appeals, in determining that the attorney's lien was superior to the state's claim for recoupment, assumed that, because the state's claim for recoupment was filed subsequent to the filing of the attorney's lien, the probate award to Benney was already encumbered with the attorney's lien prior to the filing of the state's claim. The court of appeals' analysis would be correct if the sentencing court did not assess fees and costs against Benney in excess of the $1900 set out in the judgment of conviction and if the amount of attorney fees attributable to the probate action equaled or exceeded the amount of Benney's probate award. If, however, the sentencing court imposed an order of reimbursement on Benney pursuant to the recoupment statute in an amount greater than $1900, and such order was imposed prior to the filing of the attorney's lien on December 5, 1985, the state's claim for recoupment of the full amount of any such assessment order would be superior to the attorney's lien.

Because the record before us does not disclose whether the sentencing court imposed a reimbursement obligation on Benney for attorney fees and ancillary expenses in excess of $1900, it is necessary to return this case to the trial court for further findings on that question. If the district court determines that the sentencing court ordered Benney, at the time of sentencing or some time prior to the filing of the attorney's lien, to reimburse the state for an amount in excess of the $1900 set forth in the judgment of conviction, the state would thereby have a preexisting lien on the probate award for the amount of fees and costs assessed against Benney, which lien would be superior to the attorney's lien subsequently filed in the probate action. If, however, the sentencing court's reimbursement order was limited to the $1900 set forth in the judgment of conviction, and the $1900 assessment already had been satisfied in full prior to the filing of the attorney's lien,[8] then the state's claim for recoupment filed in the probate action would be inferior to the preexisting attorney's lien for the reasonable value of legal services rendered to Benney in the probate case. Under such circumstances, any judgment in favor of the state for recoupment of attorney fees and investigative expenses in excess of the $1900 could be satisfied only from that portion of the probate award remaining after the satisfaction of the attorney's lien.

The judgment of the court of appeals is reversed and the case is remanded to that court with directions to return the case to the district court for further proceedings consistent with the views herein expressed.

---

**8.** So far as we can determine, the $1900 order of assessment apparently was satisfied in full out of money previously deposited into the registry of court by Benney. Benney's attorneys state in their brief that Benney is retired from the United States Army and receives a combined retire- ment and partial disability payment in excess of $1000 per month. Benney's monthly retirement and disability benefits might well account for the $1900 previously deposited into the registry of court.