**TOWN OF AVON, a municipal corporation, Defendant–Appellant,**

v.

**WESTSTAR BANK and County of Eagle, Defendants–Appellees.**

**No. 05CA0443.**

Colorado Court of Appeals, Div. II.

Nov. 16, 2006.

John W. Dunn and Associates, LLC, John W. Dunn, Avon, Colorado, for Defendant–Appellant.

Porterfield & Associates, LLC, Wendell B. Porterfield, Jr., Vail, Colorado, for Defendant–Appellee Weststar Bank.

Bryan Treu, Debbie J. Faber, Assistant County Attorneys, Eagle, Colorado, for Defendant–Appellee County of Eagle.

Opinion by Judge CRISWELL.*

In this interpleader action, the Town of Avon (the town) appeals the trial court's judgment declaring that the lien and security interest of Weststar Bank (the bank) in the proceeds of a tax sale conducted by the state are superior to the tax lien of the town. We reverse.

In September 2002, the Colorado Department of Revenue seized and sold the personal property of SLH Restaurant LLC, d/b/a Cassidy's Hole in the Wall (the taxpayer), in Avon, Colorado, to satisfy delinquent state sales and wage withholding taxes. The personal property sold for $54,753.50, and after deducting the delinquent state taxes, interest, penalties, and the cost of the sale, the department interpleaded the balance of $22,742.87. The town, the County of Eagle, the bank, and others asserted claims to the funds. The others are not before us on appeal.

The town asserted a claim for $8,739.56 in delinquent retail sales tax and asserted a priority lien pursuant to § 3.08.220 of the Avon Municipal Code. The county claimed $1,400.11 in delinquent personal property taxes and asserted a priority lien pursuant to § 39–1–107(2), C.R.S.2005. The bank asserted a claim for $176,036.64 and asserted that its claim was secured by a perfected security interest. It acknowledged that the county's lien was prior to its lien, but it alleged that its lien was prior to that of the town.

The sole issue before the trial court was the priority of the three competing liens. The town filed a motion for summary judgment claiming a first and prior lien over all other liens, or at a minimum, parity with the county's lien. The trial court denied summary judgment, requested supplemental briefing, and ultimately concluded that the county's lien was first in priority, the bank's second, and the town's third in priority.

The proceeds from the sale would have been sufficient to satisfy both the county's lien and the lien of the town. Because the bank acknowledged the priority of the county's lien, that lien will be satisfied irrespective whether the county's lien or the town's lien is superior to the other. The county, which was made a party to this appeal, is only a nominal party that has no real interest in the question of the priority between the town and the bank, which is the only issue presented to us.

## I.

■ As an initial matter, we address the bank's contention that we lack jurisdiction to hear this appeal. Relying on *Town of Frisco v. Baum*, 90 P.3d 845 (Colo.2004), the bank contends that the district court lacked subject matter jurisdiction as does this court. We disagree.

The *Baum* court held that the broad powers granted to home-rule cities to create, control, and define the jurisdiction of municipal courts are limited in scope to matters that are local and municipal in nature. *Town of Frisco v. Baum, supra; Hardamon v. Municipal Court*, 178 Colo. 271, 497 P.2d 1000 (1972).

Here, the department filed an interpleader action pursuant to C.R.C.P. 22; the bank answered seeking relief pursuant to a state statute; and the county sought relief pursuant to § 39–1–107(2). Thus, this action involved various issues arising under state law. Because the jurisdiction of municipal courts is limited solely to matters of municipal concern, *Town of Frisco v. Baum, supra*, we conclude that district court's exercise of jurisdiction was proper in this instance, and we likewise have jurisdiction to hear this appeal.

## II.

■ The town, pursuant to its home rule municipality authority, enacted an ordinance levying a sales tax upon sales made within its boundaries. This ordinance provided, in part, that:

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

Unpaid tax a prior lien.

(a) The taxes imposed by Section 3.08.030 shall be a first and prior lien upon the goods and business fixtures owned or used by any retailer required by the provisions of Section 3.08.120 to submit a return and make payment of the taxes collected, except the stock of goods held for sale in the ordinary course of business, until said taxes are paid in full.

(b) The lien created by Subsection (a) above shall be construed to be liens and encumbrances upon the specific items of personal property therein enumerated, and *shall take precedence over all other liens, encumbrances or claims of whatsoever nature,* and shall immediately attach to such items without the necessity of the filing of any notice of lien thereof. (emphasis supplied)

Avon Mun.Code 3.08.220.

The town contends that this ordinance established a lien prior to all other liens, including that of the bank, and that the trial court erred in refusing to recognize that priority. The bank's lien was perfected under the Uniform Commercial Code—Secured Transactions (the U.C.C.), § 4–9–101, et seq., C.R.S.2006. To the extent that the district court held that the town's lien was junior to a lien created under the U.C.C., we agree with the town that the court erred. As noted, we need not decide the extent to which, if at all, the town's lien may be prior to that of the county's lien for its taxes.

A home rule city in Colorado derives its basic authority from Article XX of the Colorado Constitution, not from any statute or other grant of power by the Colorado General Assembly. *Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692 (1960). Section 6 of Article XX authorizes the adoption of a municipal charter and provides that such a charter "shall be [the city's] organic law and extend to all its local and municipal matters." Section 6 also provides that:

Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.

* * *

It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.

In addition to this general grant of authority to legislate upon "all its local and municipal matters," Section 6 of Article XX also specifically provides that a home-rule municipality has the power to "legislate upon, provide, regulate, conduct and control:"

* * *

g. The assessment of property in such city and town and the *levy and collection* of taxes thereon for municipal purposes and special assessments; such assessments, levy and *collection* of taxes and special assessments to be made by municipal officials or by the county or state officials as may be provided by the charter." (emphasis supplied)

In accordance with Article XX, if a home-rule municipality's ordinance addresses a matter of local and municipal concern, any state statute addressing the same subject is "superseded," and to the extent that there is a conflict between the ordinance and the statute, it is the ordinance that "prevails." *Fraternal Order of Police v. Denver,* 926 P.2d 582 (Colo.1996).

In 1967 the General Assembly delegated to Colorado counties and municipalities the right to levy and collect sales and use taxes. Colo. Sess. L.1967, p. 660, et seq., codified with subsequent amendments at § 29–2–101, et seq., C.R.S.2006. Prior to the adoption of this statute, however, it had been recognized that Article XX gave home rule municipalities the authority to levy a sales tax upon goods sold within the municipality and a use tax upon goods purchased outside its boundaries for use within the municipality. No authorization by the General Assembly was required for the exercise of this power, be-

cause it related solely to a matter of local and municipal concern. *Berman v. City and County of Denver,* 156 Colo. 538, 400 P.2d 434 (1965).

Thus, when the General Assembly delegated to local governments a similar power, it was careful to note that:

> Nothing in this article shall be construed to apply to, affect, or limit the powers of home-rule municipalities organized under Article XX of the state constitution to *impose, administer, or enforce* any local sales or use tax, except those provisions which specifically refer to "home-rule." (emphasis supplied) Section 29–2–107(1), C.R.S.2005.

Nevertheless, the statute, by incorporating the collection methods described in § 39–26–117(1), C.R.S.2006, *see* § 26–2–106(1), C.R.S. 2006, provides that the taxes levied by statutory municipalities and counties "shall be a first and prior lien upon the goods and business fixtures" of any retailer subject to the tax and that this lien "shall take precedence on all such property *over other liens or claims of whatsoever kind or nature.*" (emphasis supplied). This statutory provision, which creates a lien for sales taxes levied by statutory cities and towns, is substantially identical in essence to the town's ordinance. Hence, the adoption of this provision by the General Assembly is significant for several reasons.

First, in *Four–County Metropolitan Improvement District v. Board of County Commissioners,* 149 Colo. 284, 369 P.2d 67 (1962), the supreme court held that Article XX grants to home-rule municipalities "every power" that, prior to its adoption, the Colorado General Assembly possessed to delegate authority to statutory municipalities. Therefore, it follows that, if the General Assembly can grant priority status to sales tax liens of statutory municipalities, a home-rule municipality can also provide priority for its sales tax liens.

Second, in a number of instances, the Colorado courts have declared that the assessment and collection of excise taxes, such as a sales tax, is a matter solely of local and municipal concern. In *Security Life & Accident Co. v. Temple,* 177 Colo. 14, 17, 492 P.2d 63 (1972), for example, the supreme court, in declaring the General Assembly's attempt to exempt insurance companies from a home-rule municipality's sales tax invalid, noted that: "The power to levy and collect Denver excise taxes such as a sales tax is purely local and municipal." *Accord, Winslow Construction Co. v. City & County of Denver,* 960 P.2d 685 (Colo.1998) (statute of limitations established by state statute cannot be applied to home-rule municipalities); *Deluxe Theatres, Inc. v. City of Englewood,* 198 Colo. 85, 596 P.2d 771 (1979)(the power to impose a local excise tax is "essential to the full exercise of the right of self-government granted to home-rule cities by Article XX."). *See also City of Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569 (1961) (local excise tax levied on both residents and non-residents owning rental and commercial properties within city is proper exercise of authority upon a local and municipal matter).

Given that the levy and collection of a local sales tax by a home-rule municipality is a matter solely of local and municipal concern, it would be anomalous to conclude that, while the General Assembly may grant priority to the sales tax liens of statutory cities and towns, a home-rule municipality may not make its sales tax lien superior to the commercial lien of a private lender.

Third, Article XX authorizes a home-rule municipality to assess and "collect" a sales tax. As the municipal sales tax statute evidences, the creation of a lien upon property used in the sales upon which the tax is levied is a common tool used to collect such taxes. Likewise, as this statute also evidences, making such liens superior to other liens is also a commonly used tool. In light of the prior Colorado jurisprudence in this area, holding that the assessment and collection of local sales taxes is a matter of local and municipal concern, we conclude that the priority of local liens for unpaid sales taxes, at least with respect to their superiority over private commercial liens, is also a matter solely of local and municipal concern about which the municipality may legislate, even if such legislation were to conflict with a state statute.

Further, our attention has not been directed to any statute that is in conflict with the town's ordinance.

It does not conflict with the sales tax statute which is applicable to statutory cities and towns. As we have already noted, that statute contains an express disclaimer with respect to home-rule municipalities.

Nor does it conflict with any statute governing the priority of private commercial liens. The bank's lien here was created pursuant to the provisions of the U.C.C., §§ 4–91–01 through 4–9–716, C.R.S.2006. Under that statute, priority of competing liens is subject to the general rule of "first in time, first in right." *See* § 4–9–322, C.R.S.2006.

However, this statute is specifically *not* applicable to the tax lien created by the town's ordinance. Indeed, § 4–9–109(c)(2), C.R.S., expressly provides that:

(c) This article [i.e., article 9 of title 4] does *not* apply to the extent that:

\* \* \*

(2) A statute of this state or a *constitutional provision provides authority for the creation, perfection, priority or enforcement of tax liens;*

Here, it is conceded that Article XX furnished the authority for the town to create a lien to enforce its sales tax. Hence, the priority established by the U.C.C. is specifically made inapplicable to the town's tax lien. Indeed, in *Young v. Golden State Bank*, 632 P.2d 1053 (Colo.App.1981), it was determined that the lien for sales taxes, created by § 39–26–117 (which has been adopted as a part of the municipal sales tax statute), is senior to any U.C.C.-created lien. This was so, it was said, because there was no legislative intent, in adopting the U.C.C., to limit the superior priority of a sales tax lien.

We conclude, therefore, that the town's ordinance, creating a lien for the collection of its sales taxes that is superior to the bank's lien, was a proper exercise of its authority under Article XX and that the court erred in concluding otherwise.

In reaching this conclusion, we have expressly refrained from considering the respective priorities of the liens of the state, the county and the town. This issue of priority may well present substantially different considerations, and because the proceeds from the sale here were sufficient to satisfy all of these liens, that issue is not before us in this case.

The judgment of the district court is reversed, and the case is remanded to that court for the entry of an appropriate judgment in favor of the town.

Judge ROTHENBERG and Judge ROY concur.