**NORTH VALLEY BANK, a Colorado corporation, Plaintiff–Appellant,**

v.

**McGLOIN, DAVENPORT, SEVERSON AND SNOW, PROFESSIONAL CORPORATION, a Colorado corporation, Defendant–Appellee.**

No. 09CA2559.

Colorado Court of Appeals, Div. I.

Dec. 9, 2010.

Hatch Jacobs, LLC, Robert W. Hatch, II, Brian T. Ray, Denver, Colorado, for Plaintiff–Appellant.

McGloin, Davenport, Severson and Snow, Professional Corporation, Krista L. Tushar, Kyle W. Davenport, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BERNARD.

This case presents the issue whether a statutory attorney's lien on a judgment takes priority over a previously perfected security interest. We hold that it does because (1) Colorado's statute plainly states that an attorney's lien in such circumstances is a "first lien"; (2) Colorado's version of the Uniform Commercial Code (UCC) does not govern the attorney's lien; and (3) the UCC cannot be applied to determine the relative priority of the attorney's lien and the perfected security interest. By reaching these conclusions, we affirm the trial court's judgment.

### I. Background

The facts in this case are undisputed. Plaintiff, North Valley Bank (the bank), made loans of $100,000 to BLR Construction Company, LLC (the contractor). In exchange, the contractor signed notes granting the bank a security interest in the contractor's accounts receivable and in all proceeds of these accounts. The bank perfected the security interest by filing its UCC–1 financing statement with the Colorado Secretary of State.

The contractor was later hired by Custom Landscapes of Colorado, Inc. (the landscaper) to work on a project financed by the State of Colorado. The contractor worked on the project, and billed the landscaper for $53,145, treating this amount in its records as an account receivable. The landscaper did not pay, and the contractor retained defendant, McGloin, Davenport, Severson and Snow, Professional Corporation (the attorneys), to assist in the collection of the debt.

The attorneys, on the contractor's behalf, sued the landscaper, alleging breach of contract, open account, and unjust enrichment.

The attorneys also filed notice of an attorney's lien under section 12–5–119, C.R.S. 2010, against any award that the contractor might receive as a result of the lawsuit. The bank then contacted the attorneys and informed them that it had a perfected security interest in any money that the contractor might be awarded in the lawsuit.

During the litigation of the case, the landscaper joined the State as a defendant. Eventually, the trial court entered judgment in favor of the contractor and against the State, finding that it was liable to the contractor for $51,402.

The State sent a check for this amount to the attorneys. They kept $41,381 as reimbursement for legal services and $3,000 as a retainer against any future services they might render for the contractor. They forwarded $7,021 to the contractor.

The bank, relying on its perfected security interest, claimed the entire award. The attorneys disagreed, stating that their attorney's lien was superior.

The bank then filed this case against the attorneys, raising claims for replevin, conversion, and declaratory relief. After a bench trial, the trial court determined that the attorney's lien was superior to the bank's perfected security interest. The trial court also held that, under the UCC, the money awarded to the contractor in its lawsuit was a general intangible, rather than an account receivable. Thus, the court reasoned, the award was a general intangible that was not subject to the bank's security interest. The court then entered judgment in the attorneys' favor.

### II. Does the Attorney's Lien Have Priority over the Bank's Perfected Security Interest?

The bank contends that the trial court erred when it held that the attorney's lien was superior to the bank's perfected security interest. We disagree, because we

conclude that the trial court correctly interpreted and applied the attorney's lien statute, section 12–5–119.

## A. Principles of Statutory Interpretation

When interpreting a statute, "it is our duty to 'effectuate the intent and purpose of the General Assembly.'" *Hurtado v. Brady,* 165 P.3d 871, 873 (Colo.App.2007)(quoting *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo.2005)). "[W]e look first to the language of the statute itself to determine the legislative intent." *People v. McCullough,* 6 P.3d 774, 778 (Colo.2000). If the plain language of the statute is clear and unambiguous, "it is unnecessary to resort to rules of statutory construction." *Id.* We will not "presume that the legislature used language 'idly and with no intent that meaning should be given to its language.'" *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001)(quoting *McMillin v. State,* 158 Colo. 183, 188, 405 P.2d 672, 674 (1965)). Instead, we will "presume[ ] that the General Assembly meant what it clearly said." *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989). Statutory interpretation raises questions of law that we review de novo. *Hurtado,* 165 P.3d at 873.

We are also guided by our supreme court's statement in *ITT Diversified Credit Corp. v. Couch,* 669 P.2d 1355, 1361 (Colo.1983):

> Before a statute creating a lien in favor of the state for unpaid sales taxes will be construed as giving such a lien priority over a mortgage, security interest, or other contractual lien which was perfected at the time the lien came into existence, the legislative intent that such priority be given must clearly appear from the language of the statute.

The caution inherent in this language is based on the general rule that the priority of liens and other interests is normally determined by "first in time, first in right." *See Town of Avon v. Weststar Bank,* 151 P.3d 631, 635 (Colo.App.2006)(under the UCC, the "priority of competing liens is subject to the general rule of 'first in time, first in right'"). Exceptions to the general rule must be clearly expressed. This is so because

where the language [of a tax lien] is not direct, positive, and specific, it cannot be held to create a lien on land for taxes which is superior to antecedent [e]ncumbrances. Such a construction would unjustly destroy the security; it would annul the most solemn contracts; it would take one man's property to pay another man's debt, for the citizen who takes the [e]ncumbrance antecedent to the levy acquires a vested interest in the property, which can only be taken away from him by the exercise of some power which has been directly conferred by a legislative act.

*Gifford v. Callaway,* 8 Colo.App. 359, 366, 46 P. 626, 628–29 (1896).

Although the statutory lien in question here is not a tax lien, we conclude that the language from *ITT Diversified Credit Corp.* is instructive, and we will apply it in resolving this case. It recognizes the importance of pre-existing security interests and other liens. Further, it indicates that, before such interests lose their priority to a subsequent statutory lien, the legislature's intent to give the statutory lien priority must be plainly evident in the language of the statute creating the lien.

## B. Attorney's Liens

In Colorado, there is no common law right to an attorney's lien. Rather, the right to an attorney's lien is created by statute. *People v. Brown,* 840 P.2d 1085, 1087 (Colo. 1992).

There are two varieties of attorney's liens. The first is the "charging lien." As pertinent here, a charging lien gives an attorney a lien on any judgment that "the attorney obtained or assisted in obtaining in favor of the client." *In re Estate of Benney,* 790 P.2d 319, 322 (Colo.1990). The purpose of the charging lien is to "satisfy the attorney's equitable claim for services rendered to the client." *Id.* If the charging lien attaches to a judgment, it only includes the attorney's fees and other professional services generated in obtaining the judgment. It does not include fees or costs for legal services unrelated to the judgment. *Id.* at 323.

Section 12–5–119 creates the charging lien in Colorado. The statute, first adopted by the legislature in 1903, states:

> All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a *first lien* on such demand in suit or on such judgment for the amount of his fees.

(Emphasis supplied.)

■ The charging lien automatically attaches "immediately" when a judgment is obtained, and the attorney does not need to take any further steps to enforce the lien against his or her client. However, to enforce the lien against third parties, proper notice must be given. *People ex rel. MacFarlane v. Harthun*, 195 Colo. 38, 41–42, 581 P.2d 716, 717 (1978). This case involves a charging lien.

■ The second variety is called the "retaining lien." The retaining lien allows an attorney to maintain possession of a client's papers until the client pays his or her bill for any legal services that the attorney performed. *Benney*, 790 P.2d at 322. Section 12–5–120, C.R.S.2010, creates the retaining lien.

One difference between charging liens and retaining liens is important for us to consider. Historically, the retaining lien has been classified as a possessory lien, and the charging lien has been classified as a nonpossessory lien. *See Benney*, 790 P.2d at 322 (the retaining lien is a possessory lien); *Collins v. Thuringer*, 92 Colo. 433, 437, 21 P.2d 709, 710 (1933) (an attorney's right to a charging lien "rests, not on possession, but on the equity of an attorney to be paid his fees and disbursements out of the judgment obtained as a result of his service and skill"); *see generally* Zach Elsner, Comment, *Rethinking Attorney Liens: Why Washington Attorneys Are Forced into "Involuntary" Pro Bono*, 27 Seattle U.L.Rev. 827, 830–31 (Winter 2004) (retaining liens are possessory liens; charging liens are nonpossessory liens); *Ryan A. Bowman, Case Note, Grayson v. Bank of Little Rock: The Battle Between an Attorney's Lien and a Security Interest*, 52 Ark. L.Rev. 827, 832–33 (1999). As will be explained below, this distinction is important because it affects whether, and to what degree, the UCC applies to our analysis.

### C. Meaning of "First Lien"

The charging lien statute states that the lien it creates is a "first lien." We must give that phrase its plain meaning. *See J.J.H.*, 17 P.3d at 161. The word "first" means "preceding all others: earliest in time ... foremost in position: being in front of all others ... foremost in rank, importance, or worth." *Webster's Third New International Dictionary* 856 (2002).

As would be expected from the dictionary definition of the word "first," a "first lien" is defined to be "[a] lien that takes priority over all other charges or encumbrances on the same property and that must be satisfied before other charges may share in proceeds from the property's sale." *Black's Law Dictionary* 1007 (9th ed.2009).

■■ This definition is pertinent, plain, and clear, and we apply it here. We thus conclude that the phrase "first lien" in section 12–5–119 creates a lien that takes priority over "all other charges or encumbrances on the same property." Applying the test from *ITT Diversified Credit Corp.*, 669 P.2d at 1361, we also hold that, by using the phrase "first lien," the legislature made clear its intent that an attorney's lien is to take

priority over security interests that were perfected when the attorney's lien came into existence. *See In re MBA Poultry, L.L.C.,* 261 B.R. 9, 11–12 (D.Neb.2001) (property tax lien, denominated by legislature as a "first lien," took priority over a perfected security interest), *aff'd,* 295 F.3d 886 (8th Cir.2002); *Froelich v. Graham,* 349 Ark. 692, 697, 80 S.W.3d 360, 363 (2002) (an attorney's lien "takes priority over debts that the attorney's client owes to other creditors even if the creditor's claim predates the assertion of a right to enforce the attorney's lien"); *Pangborn Plumbing Corp. v. Carruthers & Skiffington,* 97 Cal.App.4th 1039, 1047, 119 Cal. Rptr.2d 416, 422 (2002)("Public policy favors giving attorneys' contractual liens for legal services priority over judgment creditors' liens. It is often crucial for debtors to be able to retain legal counsel, and a debtor's ability to retain counsel may also accrue to the benefit of the client's creditors."); *Poinsett Construction Co. v. Fischer,* 301 S.C. 343, 344–45, 391 S.E.2d 875, 876 (S.C.Ct.App. 1990) (when legislature denominated statutory subcontractors' lien as a "first lien," it "meant what it said"; thus, subcontractors' lien took priority over previously perfected security interest).

Our holding is similar to the supreme court's holding in *ITT Diversified Credit Corp.* There, the court determined that a statutory tax lien had priority over a previously perfected security interest. This was so because the statute creating the lien stated that it was a "first and prior lien" upon a retailer's goods and business fixtures. 669 P.2d at 1362; *accord, Malakoff v. Washington,* 434 A.2d 432, 434–36 (D.C.1981); *see also Domenech v. Lee,* 66 F.2d 31, 36 (1st Cir.1933) ("It seems to us that the words 'first lien' mean a lien prior to any other lien on the real property of the taxpayer for the purpose of securing the collection of taxes.").

This conclusion is also supported by decisions from other jurisdictions that employ the *Black's Law Dictionary* definition of the phrase "first lien," and then conclude that the first lien is superior to other interests. *See MBA Poultry, L.L.C.,* 295 F.3d at 889 (personal property tax lien superior to security interest); *Gibson v. Resolution Trust Corp.,* 51 F.3d 1016, 1022 n. 9 (11th Cir.1995)(language in contract created a security interest for legal counsel); *United States Bank v. Clark,* 216 Ill.2d 334, 351–52, 297 Ill.Dec. 294, 837 N.E.2d 74, 84–85 (2005)(purchase-money and refinancing mortgages); *TCINA, Inc. v. NOCO Inv. Co.,* 95 P.3d 193, 194 (Okl.Civ.App.2004) (oil and gas operating expenses lien); *Indiana Lawrence Bank v. PSB Credit Services, Inc.,* 706 N.E.2d 570, 575 n. 7 (Ind.Ct.App.1999) (mortgage); *City of Chanute v. Polson,* 17 Kan. App.2d 159, 165, 836 P.2d 6, 10 (1992)(language in coupon bond).

The bank contends that *Cottonwood Hill, Inc. v. Ansay,* 782 P.2d 1207, 1209–10 (Colo. App.1989), dictates a different result. We disagree.

The division in *Cottonwood Hill* held that "[a] holder of a prior perfected deed of trust without actual or constructive notice of an attorney's lien ... has priority over an attorney's charging lien." *Id.* at 1211. The division's analysis focused on a statute governing deeds of trust, section 38–35–109(1), C.R.S. 2010. This real property statute gives priority to recorded deeds over unrecorded interests when the parties have not received notice of the unrecorded interests. In reaching its conclusion, the division observed that the priority of an attorney's lien did not "relate back" or have "super priority" because the legislature did not use "specific language to that effect." *Cottonwood Hill,* 782 P.2d at 1210; *see also In re Marlin Oil Co.,* 67 B.R. 284, 286–88 (Bankr.D.Colo.1986) (attorney's lien created by section 12–5–119 does not "relate back" to avoid the protections of the automatic bankruptcy stay).

However, *Cottonwood Hill* is distinguishable. First, the case here does not raise the issue whether the bank received proper notice of the attorney's lien. Second, we are also not required to compare two statutes— the attorney's lien statute and the deed of trust statute—to resolve the priority of competing interests in real property. Third, the division in *Cottonwood Hill* was apparently not asked to interpret the meaning of the phrase "first lien"; indeed, that phrase does not appear in the opinion.

The bank cites cases from other jurisdictions that have found prior perfected security interests to be superior to attorney's liens. We are not persuaded by them.

One case, *In re Hanson Dredging, Inc.*, 15 B.R. 79, 82 (Bankr.S.D.Fla.1981), noted that, in Florida, an attorney's lien was "governed by common law principles," not by statute. These principles made an attorney's lien "subject to any rights in property which are valid against the client at the time the lien attaches." *Id.* In contrast, the attorney's lien in Colorado is statutory, and the statute contains clear language denominating it as a "first lien."

The other out-of-state opinions upon which the bank relies interpret attorney's lien statutes in Illinois, Kentucky, and New York. *See McGonigle v. Combs*, 968 F.2d 810, 829 (9th Cir.1992)(Kentucky); *Watkins v. GMAC Financial Services*, 337 Ill.App.3d 58, 62–63, 271 Ill.Dec. 389, 785 N.E.2d 40, 43–44 (2003)(Illinois); *Effective Communications West, Inc. v. Board of Cooperative Ed. Serv.*, 84 A.D.2d 941, 941–42, 446 N.Y.S.2d 684 (1981)(New York). But, these cases interpret attorney's lien statutes that do not contain the phrase "first lien." *See, e.g.*, 770 Ill. Comp. Stat. 5/1 (2010) ("Attorneys at law shall have a lien upon all claims. . . ."); Ky. Rev.Stat. Ann. § 376.460 (2010)("If the action is prosecuted to a recovery of money or property, the attorney shall have a lien upon the judgment. . . ."); N.Y. Judiciary Law § 475 (2005)("the attorney who appears for a party has a lien upon his client's cause of action . . . which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor").

Our attorney lien statute is more akin to statutes found in Georgia and Louisiana. *See* Ga.Code. Ann. § 15–19–14(b) (2010) (attorney's lien is "superior to all liens except tax liens"); La.Rev.Stat. Ann. § 9:5001(A) (2010) (attorney's lien "take[s] . . . first privilege . . . superior to all other privileges and security interests").

Accordingly, courts in Georgia and Louisiana have recognized that an attorney's lien enjoys priority over other interests. *See Brooks v. Cash & Thomas Contractors, Inc.*, 137 Ga.App. 176, 176, 223 S.E.2d 225, 227 (1976)("The attorney's claim for lien is superior to all other liens except liens for taxes."); *Roberts v. Hanover Ins. Co.*, 338 So.2d 158, 159 (La.Ct.App.1976).

We deem the decisions from Georgia and Louisiana to be persuasive because the attorney's lien statutes at issue in those cases are similar to ours. Thus, they support our conclusion that the attorney's lien takes priority over the bank's perfected security interest.

### D. Effect of the UCC

The bank contends that the UCC gives the bank's previously perfected security interest priority over the attorney's lien, requiring that the bank's interest be satisfied before the attorney's interest. We are not persuaded for two reasons.

First, a statutory lien may be given priority over a previously perfected security interest if the statute indicates a "specific legislative intent to give such a priority." *La Junta Production Credit Ass'n v. Schroder*, 800 P.2d 1360, 1365 (Colo.App.1990) (interpreting former § 38–20–102(1)(a) (now codified with amendments at § 38–20–203(2), C.R.S.2010), which stated that agistor's liens are "superior to all other liens"). As we have determined above, the legislative intent to give an attorney's lien priority clearly appears in the language of the statute.

Second, the portion of the UCC upon which the bank relies, section 4–9–333, C.R.S.2010, does not apply to the facts of this case. We initially note that the attorney's lien, because it is a statutory lien for services, is not covered by the UCC § 4–9–109(d)(2), C.R.S.2010 ("This article does not apply to . . . [a] lien . . . given by statute . . . for services. . . ."). Our analysis is supported by *ITT Diversified Credit Corp.*, 669 P.2d at 1364, which held that the UCC did not apply to a statutory tax lien, and by *Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 438, 580 P.2d 1251, 1256 (1978), which held that an "attorney's lien . . . is not governed by the UCC."

Section 4–9–333 only "applies with respect to [the statutory lien's] priority." § 4–9–109(d)(2). To determine the effect of

section 4–9–333 on the priority of the attorney's lien, we turn to that statute. It states:

(a) In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:

(1) Which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2) Which is created by statute or rule of law in favor of the person; and

(3) Whose effectiveness depends on the person's possession of the goods.

(b) A possessory lien on goods has priority over a security interest in the goods if the lien is created by a statute that expressly so provides.

This section does not apply to the attorney's lien here because it attached to a judgment in a lawsuit, not to goods. A judgment does not fall under the UCC's definition of "goods." *See* § 4–9–102(44), C.R.S.2010 (definition of "goods"); *see also* Bowman, 52 Ark. L.Rev. at 853 (quoting Arkansas's version of section 4–9–333 to observe that it "will never apply to situations involving attorney's liens because a lawyer never furnishes 'services or materials with respect to goods subject to a security interest'"). Thus, section 4–9–333 does not determine the relative priority of the bank's perfected security interest and the attorney's lien.

Further, the effectiveness of the attorney's lien in this case does not depend on "possession." The attorney's lien here is a charging lien, and, unlike the retaining lien, it is nonpossessory. *See* Elsner, 27 Seattle U.L.Rev. at 830–31; Bowman, 52 Ark. L.Rev. at 832–33. Because the attorney's lien is nonpossessory, section 4–9–333 cannot be used to resolve whether the attorney's lien or the bank's perfected security interest takes priority. *See* § 4–9–109(d)(2); 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30–12, at 101 (6th ed.2010).

In arguing that its perfected security interest takes priority over the attorney's lien, the bank relies on *Colorado National Bank–Boulder v. Zerobnick & Sander, P.C.,* 768 P.2d 1276, 1277 (Colo.App.1989). However, this decision does not support the bank's position.

In *Colorado National Bank,* the division interpreted the predecessor statute to section 4–9–333 and concluded that a bank's perfected security interest in goods was not displaced by a subsequent attorney's lien. Here, however, the attorney's lien attached to a judgment in a lawsuit, not to goods. We have held above that the UCC does not apply to determine the priority of the attorney's lien because it did not attach to goods. Thus, *Colorado National Bank* is distinguishable.

## III. Conclusion

We conclude that (1) the attorney's lien, as a statutory first lien, had priority over the bank's previously perfected security interest; and (2) the UCC does not alter this priority. These conclusions are based on our assumption that the bank had a perfected security interest in the judgment in the lawsuit, but that the attorney's lien takes priority.

The bank only argues on appeal that it should be awarded the value of the entire judgment. The bank's position leads us to further conclude that the attorney's lien gave the attorneys priority in the entire judgment.

This is so because the bank has not contended that it is entitled to anything less than the entire judgment. For example, it has not argued that, even if the attorneys should receive $41,381 as reimbursement for legal services, they should not be allowed to keep $3,000 as a retainer against any future services, or they should not have forwarded $7,021 to the contractor. *See Benney,* 790 P.2d at 323 (the charging lien does not include fees or costs for legal services unrelated to a judgment). Thus, the bank has not called upon us to decide whether the attorney's lien applied to all or only to part of the judgment.

As a result, it is not necessary for us to resolve the question whether the judgment in the lawsuit created (1) a general intangible, to which the bank's perfected security interest arguably would not attach; or (2) an account receivable, to which the bank's perfected security interest arguably would at-

tach. It would only become necessary to answer this question if the bank had argued that part of the judgment was not covered by the attorney's lien. *See People v. Al–Yousif,* 206 P.3d 824, 829 (Colo.App.2006) (issue not raised in opening or reply brief will not be considered on appeal).

The trial court's judgment is affirmed.

Judge TAUBMAN and Justice ROVIRA concur.*