**MCI CONSTRUCTORS, INC., Federal Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Petitioners,**

v.

**The DISTRICT COURT OF PUEBLO COUNTY, COLORADO, DIVISION A, The Honorable Judge Richard D. Robb, and Judith Ward Mattox, Respondents.**

No. 90SA247.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1990.

McGloin, Davenport, Severson and Snow, P.C., Michael M. McGloin, Michael J. Dommermuth, Denver, for petitioners.

Mattox & O'Brien, P.C., Chris M. Darby, Colorado Springs, for respondent Judith Ward Mattox.

Justice ERICKSON delivered the Opinion of the Court.

This case is an original proceeding under C.A.R. 21 to prohibit the trial court from enforcing a contempt citation against the petitioner, MCI Constructors (MCI). On June 7, 1990, this court issued a Rule to Show Cause and stayed enforcement of the contempt citation. We now make the rule absolute and direct the trial court to conduct further proceedings consistent with this opinion.

MCI Constructors is a general contractor that contracted to work on a project known as the Pueblo Wastewater Treatment Plant. In November 1986, MCI hired Chapman Construction (Chapman) as a subcontractor on the project. A year later, Chapman hired Judith Ward Mattox as counsel and filed an action against MCI alleging breach of contract.

MCI filed counterclaims for breach of contract and failure to timely perform the contract. On February 15, 1989, the president of MCI and the president of Chapman entered into a "release and settlement agreement." Neither party's attorneys were present. The agreement, which was subscribed, sworn to, and duly acknowledged by Chapman and MCI on February 15, 1989, provided that MCI would pay Chapman $150,000 in exchange for Chapman's release of all claims and liens against MCI, indemnification of MCI, and dismissal of the underlying law suits. MCI placed the $150,000 in escrow and, on March 17, 1989, informed Chapman it was ready and willing to perform the settlement agreement.

On April 6, 1989, Mattox filed a Notice of Intent to Enforce Attorney's Lien as provided by section 12-5-119, 5 C.R.S. (1985). That notice was served on all parties and did not specify the property on which she was asserting her attorney's lien. Four days later, Mattox filed a motion to withdraw as counsel, presumably because her client had entered into the settlement agreement without her knowledge or participation. That motion was granted on September 8, 1989.

On September 26, 1989, the district court granted MCI's motion for summary judgment, based on the settlement agreement, and dismissed the underlying action with prejudice. *Chapman Constr. Co., Inc. v. MCI Constructors, Inc.*, 87CV1065. The settlement agreement, which was the basis for the summary judgment, provided in part:

> THE UNDERSIGNED further deposes and says that all labor, materials, services, supplies, equipment, etc. furnished by the undersigned will be fully paid for

prior to the final release of funds from the referenced escrow.

*IT IS UNDERSTOOD AND AGREED, that the settlement amount will be held in escrow at the law firm of Watt, Tieder, Killian & Hoffar and that said funds will be released pursuant to the applicable laws and upon the receipt of final lien waivers from H.E. Chapman's vendors and subcontractors. These lien waivers shall include those from the following companies:

SMELKER CONCRETE

WACO SCAFFOLD & EQUIPMENT

MPM CONSTRUCTION

SYMONS FORMS

GRANT RENTAL

CBS LUMBER

IT IS UNDERSTOOD that MCI Constructors will assume the liability for final settlement of Chapman's subcontractor Nicholson Steel Erectors only.

At that time, Chapman had not performed any of its obligations under the settlement agreement. It is undisputed that Chapman has not provided the lien waivers from the listed vendors and subcontractors.[1]

Mattox filed a Petition for Enforcement of Attorney's Lien on December 22, 1989. In that petition, Mattox stated that "By the terms of the Settlement Agreement, the Plaintiff [Chapman] is entitled to receive the sum of $150,000, which amount constitutes money to which a lien attaches [under sections 12–5–119 and 12–5–120]...." Mattox did not address whether her ex-client had performed the terms of the agreement. MCI filed a response claiming that Chapman was not entitled to the escrow amount since it had breached the settlement agreement. MCI also claimed that the failure of Chapman to pay its subcontractors or release MCI resulted in the subcontractors filing claims directly against MCI. Subsequently, United States Fidelity and Guaranty Co. intervened claiming that it had an interest in the escrow amount to satisfy an unrelated judgment against Chapman.

On February 20, 1990, the district court granted Mattox's petition for the enforcement of attorney's lien in the following order:

That the former Counsel for Plaintiff's Petition for Enforcement of Attorney's Lien is hereby granted, subject to proof that the requested amount is reasonable and owed by Plaintiff.

The Court finds that the Petitioner Attorney has filed, and certified service upon the Plaintiff, an itemized statement of account for services rendered and an affidavit of services rendered, which statement and affidavit appear to be proper in form.

It is further Ordered that Plaintiff, H.E. CHAPMAN CONSTRUCTION CO., INC., shall have twenty (20) days from its receipt of this Order to respond in writing to this Court contesting that the amount requested is owed and/or that the amount requested is not reasonable or necessary. In the event that no such response is filed by the Plaintiff, the Court may enter an Order directing that the requested amount be paid to Petitioner Attorney.

The court did not address whether Chapman was entitled to all or any part of the escrow account, or MCI's arguments that the settlement agreement had been breached. On MCI's motion for clarification, the court simply stated that Mattox had shown that the fees were reasonable, and that MCI was "ordered to pay to Judith Ward Mattox the amount of $44,277.75 from the funds held in escrow in settlement of the above captioned matter, such payment to be made within ten (10) days after the date

---

1. The factual basis for the dissent by Justice Mullarkey is based on the allegations contained in a complaint in intervention filed by United States Fidelity and Guaranty Company (USF & G). Chapman assigned the money it was to receive in the lawsuit that was the subject of the settlement agreement to USF & G, which asserts that the conditions in the settlement agreement have been met by Chapman and that USF & G is therefore entitled to have its claim paid. A number of other Chapman creditors also asserted claims against the funds held in escrow. In this case, however, the trial court did not address or rule on MCI's claim that the failure to deliver lien waivers, and to otherwise comply with the settlement agreement, prevented recovery of the escrow by Chapman or its assignee, USF & G.

of this order." That order was dated March 22, 1990.

Rather than pay Mattox, MCI advised the court on April 2, 1990, that because Chapman had breached the agreement and had not provided the requisite lien waivers, and because there were competing claims for the escrow amount, the escrow trustee was directed to "immediately interplead the $44,277.75 into the registry of this Court in order to protect the interests of all concerned parties." The interpleader action was filed March 30, 1990.

Mattox thereafter filed a motion for a contempt citation, and that motion was granted on May 31, 1990. The court stated that the settlement agreement was fulfilled when the court granted summary judgment and dismissed the suits. The court did not address or allude to the other conditions of the agreement. The court then found MCI in contempt, and ordered it to pay a $1,000 per day penalty until it complied with the order to pay Mattox.

MCI subsequently brought this original proceeding to prevent the district court from enforcing its March, 22, 1990, order requiring MCI to pay Mattox, and its May 31, 1990, contempt order. We issued a Rule to Show Cause on June 7, 1990, and granted MCI's motion to stay the contempt order.

## I.

MCI argues that the district court abused its discretion in granting the lien and then subsequently issuing the contempt citation. As a preliminary matter, Mattox asserts that "prohibition or mandamus are not remedies which can be afforded by this Court for an abuse of discretion." Mattox's contention is at odds with our case law. Prohibition lies where the district court has exceeded its jurisdiction or "upon a clear showing that the court has grossly abused its discretion and that an appeal would not provide an adequate remedy." *Western Food Plan, Inc. v. District Court*, 198 Colo. 251, 256–57, 598 P.2d 1038, 1041 (1979). In *People v. District Court*, 790 P.2d 332 (Colo.1990), we stated that original jurisdiction may be invoked "to review a serious abuse of discretion when an appellate remedy would not be adequate." *Id.* at 335.

Mattox also claims that MCI could have appealed the trial court's order requiring MCI to pay her out of the escrow funds. MCI responds that the trial court has not certified its order as final and that an appeal would therefore violate the one final judgment rule under C.R.C.P. 54, since there are multiple parties and actions involved. In *Bye v. District Court*, 701 P.2d 56 (Colo.1985), we held that where the underlying criminal action had been dismissed, the issue of the amount of attorney's fees was collateral and "the appropriate caption in an original proceeding more accurately reflects the adversarial status." *Id.* at 60. Original jurisdiction is an appropriate method to review a contempt order. *Losavio v. District Court*, 182 Colo. 180, 512 P.2d 266 (1973). An original proceeding is appropriate to obtain review of the issues raised in this case.

## II.

The district court order in effect determined that Chapman was entitled to $150,000 because summary judgment was entered pursuant to the settlement agreement. The plain language of section 12–5–120 gives an attorney the right to enforce a lien against "money *due* his client in the hands of the adverse party." (Emphasis added.) ("It may not, however, exceed the award received by the claimant's client under the judgment." *In re Marriage of Smith*, 687 P.2d 519 (Colo.App.1984)). The district court's order implies that Chapman is entitled to the escrow funds, and therefore that Mattox is entitled to enforce her lien for fees that Chapman owes her. That implication is made without a finding by the trial court as to MCI's underlying claims that Chapman breached the settlement agreement, failed to provide lien waivers, and was not therefore entitled to the funds. The court simply found that the agreement was satisfied when the suits were dismissed, without acknowledging or recognizing any of the other conditions of

the settlement agreement and whether they had been complied with and satisfied by Chapman.

Mattox states that no hearing was warranted, and that the district court had ample opportunity to review MCI's claims. While it is true that in each motion contesting the lien, MCI argued that Chapman had breached the agreement and did not have any entitlement to the funds, the record does not disclose any determination on that issue by the court.

Mattox also contends that it was unnecessary to resolve the numerous competing claims to the funds because, "By granting enforcement of the lien, the District Court determined that the Respondent had [first] priority." The district court failed to consider or address the priority of the liens set forth in the settlement agreement and the order that the Mattox lien claim be paid. It may be that Mattox has first priority if she has a valid lien, but it is also possible that there may be liens that became effective before the Mattox lien. Accordingly, the entry of the order to pay Mattox was error.

In *de Bit v. Howard*, 107 Colo. 51, 108 P.2d 1053 (1940), an attorney attempted to enforce a lien against the proceeds of a settlement agreement that called for the de Bits to make payments to the plaintiff and to pay the living expenses for the plaintiff, whom the attorney represented. The de Bits argued that since they had not made any payments, the agreement had not been performed and there was therefore nothing to lien. We stated, however, that "We assume that under the contract of settlement the de Bits have provided the living expenses of the [plaintiffs] during the past four years, which material provision, we think, constitutes valuable property, and one covered by [the attorney's] contract of employment." *Id.* at 53, 108 P.2d at 1054.

The cases allowing an attorney to recover settlement proceeds under an attorney's lien have done so only after the settlement has been finalized. *See, e.g., Jarboe v. Hicks*, 281 Ark. 21, 660 S.W.2d 930 (1983) (where client and opponent settled without attorney's knowledge, attorney could enforce a lien on the settlement proceeds due

his client); and *Matter of Estate of Gutchess*, 90 A.D.2d 663, 456 N.Y.S.2d 249 (1982) (settlement finalized). In *People v. Garnett*, 725 P.2d 1149 (Colo.1986), however, we stated that an attorney could not assert a lien on a promissory note conditioned on the client becoming solvent when that client never became solvent, thereby making the note void. *See also Taylor v. Pearl*, 249 Or. 611, 439 P.2d 7 (1968), where the Oregon Supreme Court held that the attorney's lien must rest upon the litigant's interest in the fund; and *Matter of Pattie*, 107 B.R. 370 (Bankr.M.D.Fla.1989), in which the court held that an attorney could not impose a lien on funds held in an escrow account pursuant to a settlement agreement between his client and the opposing party when there was not a meeting of the minds on the agreement.

■ Mattox does not cite support for her implied proposition that she can enforce the lien on the settlement fund regardless of whether her client has an interest in it. In fact, she does not contest MCI's assertion that Chapman breached the settlement contract. A lien can be enforced once the settlement agreement has been carried out, but only to the extent that the client has an interest in the funds that remain. The district court abused its discretion in awarding Mattox fees out of the fund before addressing MCI's claim that Chapman breached the settlement agreement and was not entitled to the proceeds in the fund.

### III.

MCI asserts that the court abused its discretion and erroneously issued the order that MCI pay Judith Ward Mattox $44,277.25, and in then finding MCI in contempt for failing to pay the amount that was the subject of the attorney's lien and the order. We agree.

■ We have said, "The determination whether or not certain conduct constitutes contempt is within the trial court's discretion, and is not reviewable on appeal absent an abuse of discretion." *Tipton v. City of Lakewood*, 198 Colo. 18, 21, 595 P.2d 689,

691 (1979). We find that the trial court's order to pay Mattox and the order finding MCI in contempt both were an abuse of discretion and that the issuance of both orders was error.

■ MCI also claims that it substantially complied with the order by immediately directing the escrow agent to file an interpleader action and depositing the amount of Mattox's claim into the court registry. MCI does not cite precedent to support the claim that filing an interpleader action is substantial compliance with a court order to pay a particular person a particular amount. This court has held, however, that where a court ordered a general contractor to pay a sub-subcontractor, and another subcontractor that it hired also claimed the money, the general contractor was entitled to protect itself through the use of an interpleader action. *Engineers Constr. Corp. v. Tolbert*, 74 Colo. 542, 223 P. 56 (1924). MCI's interpleader and the deposit of the controverted funds into the trial court's registry establishes MCI's good faith in dealing with the trial court's order. The record reveals that there were at least three competing claims for the money in the escrow account: Mattox's, United States Fidelity's, and MCI's. A dispute regarding funds held in an escrow account is appropriate for interpleader, *Cockrell v. United Bank of Denver*, 664 F.Supp. 1398 (D.Colo.1987), and MCI properly directed that the interpleader action be filed.

The district court abused its discretion in entering an order enforcing the attorney's lien, ordering MCI pay Mattox $44,277.75, and finding MCI in contempt. Accordingly, we make the Rule to Show Cause absolute, and direct the district court to conduct further proceedings consistent with this opinion.[2]

MULLARKEY, J., concurs in part and dissents in part.

VOLLACK, J., does not participate.

Justice MULLARKEY concurring in part and dissenting in part:

The parties have given us only a glimpse of a very complicated set of cases filed in the Pueblo County District Court concerning the construction of the Pueblo wastewater treatment facility. Apparently H.E. Chapman Construction Company, Inc. (Chapman) brought a lawsuit in 1987 against MCI Constructors, Inc. (MCI) and other defendants but the pleadings are not before us. Chapman and MCI eventually entered into a settlement agreement to resolve the claims brought by Chapman against MCI. Although Judith Ward Mattox represented Chapman in the Pueblo lawsuit, Chapman entered into the settlement agreement without consulting Mattox and without other legal representation. When Mattox learned of the settlement agreement, she moved to withdraw as Chapman's counsel. That motion was granted as was her motion for enforcement of her attorney's lien against the $150,000 which MCI agreed to pay as part of the settlement agreement.

MCI claims that the trial court erred in enforcing the attorney's lien and in holding MCI in contempt because Chapman did not satisfy the terms of the settlement agreement. Specifically, MCI claims that Chapman was not entitled to the $150,000 under the terms of the settlement agreement until it supplied MCI with lien waivers from its subcontractors. MCI asserts that Chapman has not supplied the subcontractors' lien waivers and therefore Chapman is not entitled to be paid.

The trial court found that Chapman had met its obligations under the settlement agreement. It made this finding by inference when, on February 20, 1990, it granted Mattox's motion to enforce her attorney's lien and it made the finding expressly during the contempt hearing on May 31, 1990. At that hearing, the trial court en-

---

**2.** In her response to this petition, Mattox requests that we award her additional attorney's fees because MCI lacked substantial justification for this action. Because we agree with MCI's argument that the district court abused its discretion, we need not reach Mattox's claim for attorney's fees.

gaged in the following exchange with Mr. Beltzer, counsel for the defendants:

> THE COURT: ... The settlement I was informed of that you requested of me is that I dismiss with prejudice against Chapman or against the defendants for Chapman in this case; isn't that correct?
>
> MR. BELTZER: I believe so, Your Honor.
>
> THE COURT: You have, or your clients got exactly what they wanted from me in that dismissal, is that right, based upon that settlement?
>
> MR. BELTZER: Your Honor, I, unfortunately, was not involved in that.
>
> THE COURT: Well, that's what my file shows; isn't that correct?
>
> MR. BELTZER: Okay. I will accept that, Your Honor.

The trial court then found that the settlement required "a release or a discharge or a dismissal with prejudice of the claims Chapman is asserting against MCI and the other two defendants." The court further stated that "[a]s a result of a settlement agreement I was asked to dismiss all claims by Chapman against MCI, Federal and National Union Fire Insurance Company with prejudice—which means it could not be litigated again—which I did."

The majority, however, finds that Chapman did not comply with the settlement agreement because it did not furnish MCI with lien waivers from its subcontractors. Not only is this conclusion contrary to defense counsel's concession and the trial court's finding but it also conflicts with the position taken by the United States Fidelity & Guarantee Company (USF & G). This company moved to intervene in the trial court on February 7, 1990, as the assignee of Chapman and filed a claim for declaratory judgment asking that the settlement agreement be construed. USF & G contends that the settlement agreement was satisfied by Chapman when Chapman dismissed its claims against MCI. USF & G further alleges that liens on public works projects are created by statute, that "lien" is a term of art, and that there are no liens to be waived in this case because "the statutory requirements for creating subcontractors' liens on the Pueblo Wastewater Treatment Plant Project were intentionally and knowingly avoided and intentionally and knowingly replaced with a 'special bond.'" The trial court granted USF & G's motion to intervene but the record before us is silent on its disposition of USF & G's request for declaratory judgment.

In my view, then, the majority's construction of the settlement agreement is not supported by the record. Accordingly, I see no reason to conclude that the trial court abused its discretion.

If the trial court correctly ruled that Chapman fulfilled its part of the settlement agreement, then it correctly enforced Mattox's lien on the $150,000 paid by MCI as its part of the settlement. In Colorado, a lawyer is automatically entitled to a lien on money, property, or other "fruits" due a client from the suit once a suit is commenced. *See* § 12–5–119, 5 C.R.S. (1985). *Ranes v. Molen*, 31 B.R. 70, 72 (Bankr.D. Colo.1983). This lien attaches immediately upon judgment. *Ranes v. Molen*, 31 B.R. at 72. Thus, no notice is required between the attorney and client with respect to the attorney's lien. *Collins v. Thuringer*, 92 Colo. 433, 21 P.2d 709 (1933). With respect to third parties who may have an interest in the outcome of the case, the attorney is required to file a notice of intent to claim lien in order to gain priority. § 12–5–119, 5 C.R.S. (1985). Thus, when a lawyer gives proper notice, as Maddox apparently did, her lien on the client's assets takes priority over third party claims dependent upon the outcome of the lawsuit. *Ranes v. Molen*, 31 B.R. at 72. Furthermore, this lien is chargeable against any person who, at the time notice of intent to claim a lien is given, holds monies or property which become proceeds of a judgment to be entered in the future. *In re Marriage of Smith*, 687 P.2d 519, 520 (Colo.Ct.App.1984). Thus, the trial court did not abuse its discretion in enforcing Maddox's lien.

With respect to the contempt finding, however, I agree with the majority's conclusion that the trial court abused its discretion. We discussed the standards for

civil contempt in *People v. Lockhart,* 699 P.2d 1332, 1336 (Colo.1985):

> A court may enter a finding of civil contempt for refusal to obey a court order under C.R.C.P. 107 only if it finds that a party who has a duty to obey a court order and a present ability to obey the order has refused to perform the act required. *In re People in the Interest of Murley,* 124 Colo. 581, 239 P.2d 706 (1951); *In re Marriage of Harris,* 670 P.2d 446 (Colo.App.1983); *Marshall v. Marshall,* 35 Colo.App. 442, 536 P.2d 845 (1975). A party may be held in contempt only for refusal to do exactly what the court order requires. *Eatchel v. Lanphere,* 170 Colo. 545, 463 P.2d 457 (1970). A party may not be held in contempt for refusal to do that which he is unable to do or that which the court has not ordered him to do.

Here the trial court's March 22, 1990 order directed MCI and the two insurance companies to:

> pay to Judith Ward Mattox the amount of $44,277.75 from the funds held in escrow in settlement of the above-captioned matter, such payment to be made within ten (10) days after the date of this Order.

The defendants were not able to do "exactly" what the court ordered. They could not pay out the funds held in escrow but directed the law firm holding the funds to interplead the funds into the registry of the court. The law firm did so and the defendants were not in contempt under the *Lockhart* test.

For these reasons, I concur in part in, and dissent in part from, the majority opinion.