2015 CO 32

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Petitioner**

v.

**MEDICAL LIEN MANAGEMENT, INC., a Colorado corporation, Respondent.**

**Supreme Court Case No. 13SC556**

Supreme Court of Colorado.

May 26, 2015

Attorneys for Petitioner: Wheeler Trigg O'Donnell LLP, Terence M. Ridley, Evan Stephenson, Lyda Law Firm LLC, Mark E. Lyda, Denver, Colorado

Attorneys for Respondent: Robinson, Waters & O'Dorisio, P.C., Zachary P. Mugge, Denver, Colorado

Attorneys for Amici Curiae Colorado Civil Justice League and Colorado Defense Lawyers Association: Ruebel & Quillen, LLC, Jeffrey Clay Ruebel, Casey Quillen, Westminster, Colorado

JUSTICE COATS delivered the Opinion of the Court.

¶ 1 Allstate petitioned for review of the court of appeals' judgment reversing the dismissal of a breach of assignment claim brought by Medical Lien Management. Notwithstanding allegations of the complaint to the contrary, the district court effectively construed MLM's Lien and Security Agreement with a motor vehicle accident victim, upon which the complaint was premised, as failing to assign the victim's right to the proceeds of his personal injury lawsuit against Allstate's insured. By contrast, the

court of appeals found a valid assignment to MLM of all rights to the future proceeds from the victim's personal injury claim in an amount equal to the costs of medical services paid for by MLM, as well as a sufficient allegation in the complaint of an enforceable obligation by Allstate to pay the assigned sums to MLM.

¶2 Because the court of appeals erred in finding the purported assignment in this case, of an as-yet indeterminable portion of proceeds of an unresolved personal injury claim, to be effective against Allstate, the judgment of the court of appeals is reversed.

## I.

¶3 In 2010, Medical Lien Management, Inc., a medical debt company, brought suit against Allstate Insurance Company and Fred Martinez, a person injured in a motor vehicle accident with Allstate's insured. MLM's complaint alleged that in March 2007, in exchange for MLM's agreeing to pay for Martinez's medical treatment, he and MLM entered into a "Lien and Security Agreement" providing, among other things, that Martinez granted MLM a lien on any and all proceeds derived from his personal injury claim in an amount equal to the fees and costs of medical care "performed and to be performed" on Martinez. The complaint further alleged that in April 2007, a month after the Agreement was signed, MLM sent Allstate, the insurer of the tortfeasor, a notice, entitled "Notice of Lien or Assignment of Proceeds," informing Allstate of the Agreement and instructing Allstate to issue all payments on behalf of its insured to MLM. The complaint alleged that MLM ultimately paid for $9,938 worth of medical expenses for Martinez. In addition, it alleged that Martinez settled his tort claim against Allstate's insured in October 2008 and that Allstate issued payment on behalf of its insured directly to Martinez, rather than to MLM, notwithstanding the instructions in MLM's Notice. Finally, the complaint alleged that Martinez failed to pay MLM as required by the Agreement. In its complaint, MLM asserted claims of breach of contract, account stated, and unjust enrichment against Mar-

tinez, and breach of assignment against Allstate.

¶4 Based in large part on the terms of the Agreement itself, Allstate moved pursuant to Rule 12(b)(5) of the Colorado Rules of Civil Procedure for dismissal of MLM's breach of assignment claim, asserting that it failed to state a claim upon which relief could be granted. The district court granted Allstate's motion, concluding in pertinent part that the Agreement simply failed to assign Martinez's right to proceeds from his personal injury lawsuit, and instead merely authorized Allstate to pay MLM directly. After Allstate's dismissal from the case, MLM's claims against Martinez proceeded to a judgment for MLM. After the judgment became final, MLM appealed the district court's order dismissing its claim for breach of assignment against Allstate.

¶5 The court of appeals reversed, concluding that the language of the Agreement sufficiently evidenced an intent by the parties to effect a present transfer of that portion of Martinez's future personal injury recovery equal to the fees and costs of services provided to him by MLM. From the allegations of the complaint itself, the incorporated Notice of Lien or Assignment of Proceeds, and an account statement detailing the costs of treatment, the court further found an adequate allegation that Allstate was on notice of the assignment. Finally, the court concluded that an assignment, as alleged by MLM, of the prospective proceeds of Martinez's personal injury claim against Allstate's insured, ultimately resolved in this case by settlement agreement, would be effective and enforceable against Allstate as Martinez's obligor.

¶6 With regard to the alleged assignment's effectiveness, or enforceability, as against Allstate, the intermediate appellate court relied both on authorities concerning the assignability of future or conditional contractual rights and authorities concerning the assignability of proceeds of a personal injury suit that had not yet been reduced to judgment. With regard to the assignability of future or conditional contractual rights, in particular, the appellate court expressly declined to follow, at least as it would apply to

the settlement of personal injury claims, another panel's understanding of the Restatement of Contracts as finding ineffective purported assignments of future contractual rights. Instead the appellate court in this case understood the Restatement to sanction the assignment of future and conditional rights in contract, including rights created by the settlement agreement in this case.

¶ 7 Allstate sought and we granted further review of the appellate court's determination that, as a matter of law, Martinez's rights in the prospective settlement of his personal injury lawsuit were assignable in a manner legally binding on his obligor, Allstate.

## II.

■ ¶ 8 As both the court of appeals and district court were fully aware, the legal import of instruments, agreements, and other authorities upon which a complaint necessarily depends, and which are therefore either expressly or impliedly incorporated by it, are to be taken into account in ruling on a motion to dismiss for failure to state a claim. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo.2011); *see generally* 2 James W. Moore, *Moore's Federal Practice* § 12.34[2], at 12–87 to –91 (3d ed. 2015). Taking into account the legal import of the Lien and Security Agreement and Notice of Lien or Assignment of Proceeds referenced in the complaint, Allstate's motion to dismiss would have been properly granted if MLM could prove no set of facts in support of its claim which would entitle it to relief. *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 12, 304 P.3d 217, 221.

¶ 9 While the statutes of this jurisdiction implicitly acknowledge the existence and continued enforceability of assignments, by circumscribing their effect in various ways and with regard to various specific rights or interests, *see, e.g.,* § 5–3–206(1), C.R.S. (2014) (prohibiting assignment of earnings for payment or as security in consumer credit trans-

actions); § 5–10–502(1)(a), C.R.S. (2014) (prohibiting assignment of earnings in rental purchase agreements); § 13–64–209, C.R.S. (2014) (restricting assignment of periodic payments derived from lawsuits against healthcare professionals); §§ 8–9–101 to –107, C.R.S. (2014) (limiting assignment of wages); §§ 13–23–101 to –108, C.R.S. (2014) (governing assignment of structured settlements), and by expressly providing for assignments of specific rights or interests in limited circumstances, *see, e.g.,* § 10–16–106.7, C.R.S. (2014) (allowing but not requiring assignments of health insurance benefits to licensed health care providers in exchange for services provided); § 8–41–203(1)(b) (assigning, upon payment of workers' compensation and as a matter of statute, cause of action of injured worker against tortfeasor to payer of compensation), the revised statutes do not purport to define the legal concept of assignment or describe the scope of its applicability. Taken generally as a transfer of rights or property from one person to another, *see Black's Law Dictionary* 142 (10th ed. 2014), the cognizability and effect on third parties of the right of assignment have developed as, and in this jurisdiction largely remain, matters of court-made law. *See Damaskus v. McCarty–Johnson Heating & Eng'g Co.*, 88 Colo. 279, 295 P. 490, 491 (1931) (embracing plaintiff's contention that "[t]he validity of assignments, except as otherwise provided by statute, is to be determined on principles of the common law"); *see, e.g., Condo v. Conners*, 266 P.3d 1110, 1112, 1116–19 (Colo.2011) (looking to the Restatement (Second) of Contracts to resolve dispute regarding assignment of contractual rights).[1]

¶ 10 The concept of assignment has evolved considerably over time, adapting to emerging commercial realities and involving much interplay between actions cognizable in law and those cognizable in equity. *See generally* 9 John E. Murray, Jr., *Corbin on Contracts* § 47.3 (Joseph M. Perillo ed., rev. ed. 2007); 3 E. Allan Farnsworth, *Farns-*

---

1. While the law of assignments is largely court-made law, Article 9 of the Uniform Commercial Code now provides a statutory framework for security interests often used to accomplish the same ends as assignments. *See generally* §§ 4–9–101 to –809, C.R.S. (2014). In many commercial sectors, Article 9 has superseded assignment. 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 11.2, at 67–68 (3d ed. 2004). Whatever the merits of such a claim might be for the facts alleged, MLM did not pursue an Article 9 security interest here.

*worth on Contracts* § 11.2 (3d ed. 2004). While an assignment is not itself a contract, *Farnsworth, supra,* § 11.3, at 70, assignments often appear in contracts, and rights created by executory contracts, as quintessential "choses in action," have long been accepted as interests that are generally assignable, *see id.* §§ 11.1–11.2. The American Law Institute's Restatements of Contracts therefore extensively treat the historical development of assignments and present the modern law of assignment of contracts as a single system of rules. *See Corbin, supra,* § 47.3, at 137. Both this court and the court of appeals have therefore looked to these Restatements as persuasive authority concerning the law of assignments. *See, e.g., Condo,* 266 P.3d at 1112, 1116–19; *In re Marriage of Lipira,* 621 P.2d 1390, 1391 (Colo.App.1980).

■ ¶ 11 By its very nature, an assignment of a right affects anyone of whom that right demands a performance. As explained by the Restatement (Second) of Contracts, "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) of Contracts § 317(1) (1981). While contract rights are held to be generally assignable, *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.,* 874 P.2d 1049, 1052 (Colo.1994), the Restatement specifies various circumstances in which that will not be the case, including when forbidden by statute or public policy, and whenever it would materially change the duty of the obligor or materially increase the burden or risk imposed on him. Restatement (Second) of Contracts § 317(2); *see Farnsworth, supra,* § 11.4, at 79–85; § 4-2-210(2), C.R.S. (2014); *cf. Parrish Chiropractic,* 874 P.2d at 1053 (noting that non-assignment clauses in insurance policies are strictly enforced against attempted pre-loss transfers because such assignments materially increase insurers' risk or obligation).

¶ 12 It has also commonly been noted that the concept of an assignment as a present transfer that extinguishes a contract right in the assignor and recreates that right in the assignee logically requires an existing right in the assignor. *See Corbin, supra,* § 50.1, at 223; *see also Patton v. Coen & Ten Broeke Carriage Mfg. Co.,* 3 Colo. 265, 268 (1877). The conceptual and practical difficulties surrounding the transfer of property not yet acquired by the transferor have resulted in various rationales, distinctions, and resorts to equitable principles to justify different outcomes with regard to interests of different natures. *See generally Farnsworth, supra,* § 11.5. But to the extent the court of appeals understood the Restatement (Second) of Contracts to treat future and conditional contract rights identically, as assignable interests, or understood the Restatement to include within its reference to "conditional" rights the prospective proceeds of a personal injury lawsuit, prior to settlement or judgment, we believe it simply misread the Restatement.

¶ 13 By "conditional" rights the Restatement expressly refers to rights created by an option contract or made conditional on the performance of a return promise or otherwise made conditional by an existing contract; and with regard to such rights, it makes clear that their conditional nature does not prevent their assignment before the condition actually occurs. Restatement (Second) of Contracts § 320. For purposes of assignment, rights arising under a contract are treated as existing from the moment of the contract's formation, even though the chance may be slight that a duty of immediate performance will ever arise. *Id.* § 321 cmt. a. With regard to future contract rights, however, the Restatement makes equally clear that a purported assignment of a right expected to arise under a contract not yet in existence operates only as a promise to assign the right when it arises and as a power to enforce it. *Id.* § 321(2). Depending upon various factors, including whether the promise was given for value, it may be enforceable in some manner against the promisor, but it does not constitute an assignment of future or after-acquired rights so as to be effective against the promisor's obligor. *Id.*

¶ 14 Some confusion regarding this proposition may arise from the separate treatment

by the Restatement (Second) of Contracts of the different topics, "What Can Be Assigned or Delegated," in sections 317 to 323, and "Mode of Assignment or Delegation," in sections 324 to 330. With regard to the Mode of Assignment, section 330 specifies that a contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment at all; however, except as provided by statute, the effect of such a contract on the rights and duties of the obligor and third persons must be determined by the rules relating to specific performance of contracts. A comment notes that even though it does not constitute a present assignment, under some circumstances the promisee in such a contract may have a right to specific performance; and if the promise is one that can be enforced against third parties, such a right resembles that of an assignee and is sometimes referred to as an "equitable assignment" or "equitable lien." *Id.* § 330 cmt. c.

¶ 15 Apart from the fact that the remedy of specific performance is generally unavailable unless the promisee's remedy in damages would be inadequate, *see id.* § 359(1), in this case MLM has not pleaded a contract with Martinez to make a future assignment or a contract to transfer proceeds to be received in the future, much less the enforceability of such a contract against a third party like Allstate or any justification or demand whatsoever for specific performance. Quite the contrary, in its Answer before this court MLM appears to disclaim any such theory, and nothing in the court of appeals' opinion suggests reliance on the circumstance identified by section 330.

¶ 16 Beyond disclaiming a contract to make a future assignment or to transfer proceeds to be received in the future, MLM would have us understand the court of appeals' rationale as not depending on resolution of Martinez's personal injury claim by settlement agreement at all. Notwithstanding the court of appeals' emphasis on the contractual nature of a settlement agreement, MLM argues that its conclusion is ultimately justified simply by the fact that proceeds of litigation are assignable, even before judgment or settlement in the case. Whether or not an effective assignment of the proceeds of a personal injury claim before judgment might be cognizable under some circumstances, because the Agreement in this case purports to grant a right to payment for medical services not yet performed or knowable, it cannot fairly be understood to assign the proceeds, or even a determinable portion of the proceeds, of Martinez's personal injury suit.

¶ 17 With regard to the assignment of claims or causes of action, as distinguished from the assignment of what was referred to at law as the "chose in possession" or "chose in action" itself, we have at times relied on the general rule that assignability and descendibility go hand in hand. *See, e.g., Kruse v. McKenna*, 178 P.3d 1198, 1200 (Colo.2008); *Micheletti v. Moidel*, 94 Colo. 587, 32 P.2d 266, 267 (1934). And while the statutes of this jurisdiction do not directly provide for the assignability of causes of action, they do provide for their descendibility. *See* § 13–20–101, C.R.S. (2014). In this regard, the predecessor of the current statutory provision expressly excluded from survival those actions of "trespass for injuries done to the person," along with "actions on the case for slander or libel," § 5383, C.L. (1921); *see also Micheletti*, 32 P.2d at 267. By contrast, the current statute bars the survival of causes of action for libel or slander; but with regard to personal injury claims, it simply limits the damages recoverable after the death of the person in whose favor such action has accrued to loss of earnings and expenses sustained or incurred prior to death, and prohibits damages for pain, suffering, disfigurement, and prospective profits or earnings after date of death. § 13–20–101. Although the court of appeals appeared to conclude that a claim for personal injury would now be assignable; and although another provision of the Agreement expressly purported to assign to MLM "any and all causes of action to the extent of the sums due under this Lien and Security Agreement that Patient might have or that may exist in Patient's favor"; we need not opine on the current assignability of personal injury claims in this jurisdiction both because the complaint in this case did not allege the

breach of such an assignment and because MLM did not pursue Martinez's personal injury claim as the real party in interest.

¶ 18 Were a cause of action for personal injury now fully assignable in Colorado, we would rank among an extremely small minority of jurisdictions. *See* Anthony J. Sebok, *The Inauthentic Claim,* 64 Vand. L. Rev. 61, 74–75 (2011) ("The most important current limitation, universally enforced except in Texas, and to a lesser extent Mississippi, prohibits the assignment of causes of action for personal injuries." (footnotes omitted)); R.D. Hursh, 40 A.L.R.2d 500 § 5.5 (originally published in 1955). Even without acknowledging the assignability of personal injury actions, however, a not insignificant number of jurisdictions recognize the assignability of proceeds from a personal injury action, even before judgment or settlement in the case. *See* Andrea G. Nadel, 33 A.L.R.4th 82 § 3(a) (originally published in 1984); Sebok, *supra,* at 82. With regard to the conceptual difficulty of transferring an interest or right that the purported transferor does not yet have and of which he may not be assured, some jurisdictions noted by the court of appeals and MLM conclude, although perhaps not on a common or consistent rationale, that the proceeds of a specific claim for personal injury are sufficiently extant at any time after the injury has occurred. Sebok, *supra,* at 82. While a specific amount to be recovered by the holder of the claim may not yet be determinable at that stage, the fund constituting any recovery to which the holder of the claim will be entitled, or even an expressly identified percentage of it, is already well defined.

 ¶ 19 By contrast, the language of the Agreement found by the court of appeals to adequately evidence an intent to assign did not purport to assign the proceeds of Martinez's claim or even an identifiable percentage of them. Instead, it "grant[ed] to MLM all rights *to payment from* any and all proceeds derived from the patient's claim or claims for personal injury *in an amount equal to fees and costs of services provided to patient.*" (Emphasis added). Quite apart from the conceptual difficulty of transferring to another something one does not yet have, the assignment purported by this language would violate another basic precept of assignment law, applicable to contractual and non-contractual rights alike: that substitution of a right in favor of the assignee for a right in favor of the assignor may not materially increase the burden or risk on the obligor. *See Farnsworth, supra,* § 11.4; *see also* Restatement (Second) of Contracts § 317(2)(a); § 4–2–210(2); *cf. People v. Adams,* 243 P.3d 256, 261 (Colo.2010) (noting that Colorado law disallows assignments involving matters of personal trust and confidence or personal service).

 ¶ 20 While ancient limitations on partial assignments have largely been abandoned, it nevertheless remains essential that the assigned portion of a right or interest be identified by fraction, amount, or otherwise, with sufficient precision to put the obligor on notice of the extent of the assignment. *See, e.g.,* Restatement (Second) of Contracts § 326(1); *see also* 6A C.J.S. *Assignments* § 60 (2004) ("The subject matter of an assignment must be described with such particularity as to render it capable of identification."); *cf.* C.R.C.P. Ch. 23.3, Rule 5 (requiring that a lawyer's contingent fee—which is protected by statutory lien, *see* § 12–5–119, C.R.S. (2014)—be specified by precise percentage in fee agreement). By purporting to grant MLM a right to no more than payment from the proceeds in an amount equal to the fees and costs of services provided by MLM, the Agreement would, at the very least, impose on Allstate as obligor the additional burden of determining the point at which those fees and costs should be measured and of resolving any disputes in this regard between the purported assignor and purported assignee. With regard to the latter, the very claim against Allstate in this case is premised on the assertion that Martinez declined, for whatever reason, to reimburse MLM as was also required by the Agreement; and with regard to the former, apart from the fact that the accounting presented to Allstate clearly includes costs allegedly incurred after the purported assignment, even MLM acknowledges this additional burden, asserting merely that it can be overcome by joining the purported assignor and assignee as

defendants in a court action and requiring them to interplead their respective claims. *See generally* C.R.C.P. 22. Moreover, an error in the above determinations could expose Allstate to risk of a third-party bad faith claim brought by its insured. *See Goodson v. Am. Standard Ins. Co. of Wis.,* 89 P.3d 409, 414 (Colo.2004) ("Third-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy."). On its face, a purported assignment of an interest so ill-defined as to require the assignor's obligor to independently determine and verify the extent of the assignor's indebtedness to the assignee, possibly resorting to court action to do so, imposes an impermissible additional burden and risk on the obligor.

¶ 21 Whether a cause of action for personal injury is now assignable in this jurisdiction and, even if not, whether the recovery from a personal injury claim is assignable before it is reduced to settlement or judgment are questions that need not be resolved in this case. It is enough that the language of the Agreement from which the court of appeals found adequate allegation of a claim upon which relief could be granted failed to describe as an assigned interest either an existing contract right or a determinable portion of the proceeds of a personal injury claim.

### III.

¶ 22 Because the court of appeals erred in finding the purported assignment in this case, of an as-yet indeterminable portion of proceeds of an unresolved personal injury claim, to be effective against Allstate, the injured person's alleged obligor, the judgment of the court of appeals is reversed.