24CA1442 Granite v Scheid 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1442
City and County of Denver District Court No. 20CV33578
Honorable Andrew J. Luxen, Judge

Granite Re, Inc., a Minnesota corporation,

Defendant-Appellant,

v.

Scheid Cleveland, LLC,

Appellee.

---

JUDGMENT REVERSED

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Jennings Haug Keleher McLeod Waterfall LLP, Dennis J. Bartlett, Michael Y. Ley, Denver, Colorado, for Defendant-Appellant

Scheid Cleveland, LLC, S. Jan Cleveland, Denver, Colorado, for Appellee

¶ 1     In this attorney's lien enforcement case, Granite Re, Inc., and Scheid Cleveland, LLC (attorney) each claim a right to certain funds held in an escrow account.  The district court entered judgment in favor of the attorney, and Granite appeals.

¶ 2     We conclude that the attorney's lien could not attach to the escrow funds because the attorney's client, All Star Glass, LLC, did not have an interest in the funds when the lien was filed.  Therefore, we reverse.

## I.     Background

¶ 3     In 2018, Urban Oaks Builders, LLC (general contractor) subcontracted with All Star for the installation of windows and doors on a construction project.  Manko Window Systems, Inc. (glass supplier) agreed to provide glass products to All Star.

¶ 4     The general contractor, All Star, and Granite, as the surety, all executed payment and performance bonds.  The bonds provided that if All Star failed to pay its suppliers or perform its obligations to the general contractor, Granite would pay all amounts due or cure any defaults.

¶ 5     As a condition of the issuance of the bonds, All Star entered into indemnity and escrow agreements.  Under the indemnity

1

agreement, as part of its obligation to indemnify Granite for all losses incurred from issuing the bonds, All Star agreed that, in the event of a default (as defined in the indemnity agreement), All Star's right to any contract funds from the general contractor was assigned to Granite. Under the escrow agreement, All Star agreed that all contract funds would be deposited into a designated escrow account and used to pay its expenses and to "indemnify, as necessary, Granite . . . regarding any claims asserted against [it] as surety for [All Star]."

¶ 6 In 2019, disputes arose on the project. Defects in the glass supplier's products were discovered, which caused the general contractor to withhold contract funds from All Star. All Star then stopped paying the glass supplier, and the glass supplier sued All Star and Granite. All Star, represented by the attorney, asserted counterclaims against the glass supplier and third-party claims against the general contractor.

¶ 7 In 2021, the general contractor, All Star, and Granite entered into a settlement agreement. Under the agreement, the general contractor agreed to release any claim it had to $49,190 in contract

funds remaining in the escrow account and to pay an additional $175,000 into the account.

¶ 8    All Star and the glass supplier proceeded to trial in July 2022. The jury found in favor of the glass supplier on all claims and counterclaims.  Pursuant to its agreements with All Star, Granite paid the glass supplier $700,000 to satisfy the judgment against All Star.

¶ 9    On August 3, 2022, the attorney filed a notice of an attorney's charging lien against the approximately $225,000 held in the escrow account.  Sometime during that same month, Granite removed those funds from the account.  (When Granite later sued All Star under the indemnification agreement to recover the $700,000 it paid to the glass supplier, Granite applied the $225,000 from the escrow account as a setoff against the judgment entered in its favor.)

¶ 10    Meanwhile, in early 2023, the attorney moved for the entry of a judgment on the lien.  Granite objected, arguing that the attorney's lien could not attach to the funds in escrow because, under the parties' agreements, All Star had no interest in those

funds, as they had been assigned to Granite to reimburse it for its losses associated with issuing the bonds.

¶ 11 In September 2023, before the district court could resolve the dispute, All Star filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, and an automatic stay entered in the case under 11 U.S.C. § 362. But in February 2024, the bankruptcy court issued an order lifting the stay and authorizing the parties to "proceed with [the attorney's lien] litigation" in district court. (Two days later, while the dispute was pending in district court, the bankruptcy court entered a final order confirming All Star's reorganization plan.)

¶ 12 The attorney subsequently filed a renewed motion to reduce its lien to a judgment, and the district court granted the motion. The district court concluded that under the rule announced in *North Valley Bank v. McGloin, Davenport, Severson & Snow, Professional Corp.*, 251 P.3d 1250, 1254 (Colo. App. 2010), the attorney's lien took priority over Granite's claimed interest. Accordingly, it ordered Granite to remit the escrow funds to the attorney to satisfy the lien.

¶ 13 Granite filed a motion to reconsider, which the district court denied. This appeal followed.

## II.    Analysis

¶ 14    The district court entered judgment in favor of the attorney because an attorney's charging lien under section 13-93-115, C.R.S. 2025, "takes priority over all other charges or encumbrances on the same property." *N. Valley Bank*, 251 P.3d at 1254-55 (citation omitted).  On appeal, Granite revives its attacks on the validity of the attorney's lien, arguing that (1) the bankruptcy proceedings preclude enforcement of the lien; (2) the attorney was fully paid for its services that resulted in the payments into the escrow account, and therefore its lien could not attach to those funds; and (3) the lien could not attach to the escrow funds because, at the time the lien was filed, All Star no longer had an interest in the funds.

¶ 15    We agree with Granite's last argument; therefore, we reverse on that basis without addressing Granite's remaining arguments.

### A.    Standard of Review

¶ 16    We review a district court's order granting an attorney's lien for an abuse of discretion.  *MCI Constructors, Inc. v. Dist. Ct.*, 799 P.2d 40, 43 (Colo. 1990).  A court abuses its discretion if its

decision is "manifestly arbitrary, unreasonable, or unfair or when it misapplies the law." *Curry v. Brewer*, 2025 COA 28, ¶ 27.

¶ 17 Contract interpretation, on the other hand, is a question of law that we review de novo. *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2019 CO 65, ¶ 31.

## B. Entitlement to the Funds

¶ 18 Citing the indemnity agreement's assignment provision, Granite argues that when All Star stopped paying the glass supplier in August 2019, an "Event of Default" occurred, at which point All Star was deemed to have assigned all of its contract rights to Granite. Therefore, Granite says, from that point forward, All Star no longer had a legal interest in the escrow funds. And because an attorney's lien can be enforced "only to the extent that the client has an interest in the funds," *MCI Constructors*, 799 P.2d at 44, Granite contends that the attorney's lien fails as a matter of law. We agree.

¶ 19 Under the indemnity agreement, an event of default occurs upon "any failure to timely and fully satisfy payment liabilities or obligations to . . . suppliers." All Star stopped paying the glass supplier in 2019, and in July 2022, a jury found it liable for breach

6

of contract. Thus, an event of default occurred, at the latest, in July 2022 — before the attorney filed the attorney's lien on August 3, 2022.

¶ 20 And upon the default, All Star assigned "all accounts receivable and contract rights, including rights and claims to earned and deferred contract funds and balances, including retainages, whether arising from bonded contracts or unbonded contracts," to the surety. That assignment operated to divest All Star of its rights under the contract and transfer them to Granite. *See Allstate Ins. Co. v. Med. Lien Mgmt., Inc.*, 2015 CO 32, ¶ 11 ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance . . . is extinguished . . . and the assignee acquires a right to such performance." (citation omitted)); *Am. Ins. Co. v. N.Y.C. Health & Hosps. Corp.*, 265 F. Supp. 2d 434, 439 (S.D.N.Y. 2003) (an assignment clause in an indemnity agreement "effectively transferred" the bonded party's property interest such that a tax lien could not attach to it); *In re Jones Const. & Renovation, Inc.*, 337 B.R. 579, 587 (Bankr. E.D. Va. 2006) (where debtor assigned rights to contract funds to surety under indemnity agreement, those

rights vested in the surety and were excluded from the debtor's bankruptcy estate).

¶ 21    The attorney does not dispute that All Star defaulted under the indemnity agreement or that, upon an event of default, contract funds were assigned to Granite.  The attorney argues, though, that the general contractor's settlement payment did not constitute contract funds — instead, the payment constituted "settlement funds," which the indemnity agreement did not specifically assign to Granite.  For several reasons, we disagree.

¶ 22    First, contrary to the attorney's argument, the district court did not make a finding that the funds in the escrow account were "settlement funds," not contract funds.  It did not address the issue. The court appears to have simply adopted the attorney's term to describe the funds in the escrow account.  Thus, we disagree that there is a factual finding about the nature of the escrow funds to which we must defer.

¶ 23    Second, the record shows that the settlement payment comprised funds already paid under the contract and a portion of the contract funds previously withheld.  The $49,190 was the balance remaining in escrow from the general contractor's initial

payment of $968,833.  In June 2019, the general contractor stopped making contract payments.  Later, it paid $175,000 to settle the dispute involving the unpaid contract funds.  In the trial management order, All Star, represented by the attorney, acknowledged that the settlement payment offset the amount it was still owed under the contract.

> All Star was not paid the final balance due to it ($1,107,370.71) by the [general contractor].  This final balance due was reduced by . . . [the general contractor's] payment to All Star of $175,000 as part of a Settlement Agreement . . . .  All Star claims as damages the unpaid balance owed it under the subcontract . . . .

In other words, All Star treated the settlement payment as contract funds for purposes of calculating its damages in the litigation against the glass supplier.

¶ 24    Third, the settlement agreement contained a term requiring that the settlement payment be deposited into the escrow account established to hold contract funds.  And once deposited into the account, the funds were subject to the escrow agreement, which authorized Granite to disburse the funds if necessary for indemnification purposes.  This term evinces an intent that the funds be used to reimburse Granite for its losses — otherwise, the

9

funds would have been paid directly to All Star, without making use of the escrow account. *See Klun v. Klun*, 2019 CO 46, ¶ 18 ("In construing a contract, [a court's] primary goal is to determine and give effect to the intent of the parties.").

¶ 25 The attorney says that by signing the settlement agreement, Granite "gave up any rights it might have had to any funds in the escrow account." But the settlement agreement does not say that, and we interpret contracts as written. *See Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011). Nor does the attorney explain why, after the settlement payment, the funds in the escrow account were "no longer 'Contract Funds'" but instead "became 'Settlement Funds.'" We do not see any support for that assertion in the record or case law. True, the settlement payment was paid to All Star, but that is hardly surprising, as the general contractor allegedly owed All Star over $1 million in withheld contract funds. And, as noted, because the settlement payment had to be deposited into the escrow account, the settlement agreement preserved, rather than forfeited, Granite's right to access the funds.

¶ 26 In sum, we conclude that the settlement payment constituted contract funds for purposes of the indemnity and escrow

agreements. And under the indemnity agreement, All Star transferred its interest in the funds to Granite as of July 2022 at the latest. Thus, by the time the attorney filed the attorney's lien, All Star had no interest in the funds to which the attorney's lien could attach. *See MCI Constructors*, 799 P.2d at 44; *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1153 (Colo. App. 1993) ("[A]n attorney's entitlement to fees . . . depends entirely upon the extent of his or her client's interest in th[e] judgment.").

## III.   Disposition

¶ 27     The judgment is reversed.[1]

JUDGE FOX and JUDGE SCHUTZ concur.

---

[1] In light of our disposition, we deny the attorney's request for appellate attorney fees.